**William J. COLMAN, Plaintiff and Respondent,**

v.

**A. J. BUTKOVICH et al., Defendants and Appellants.**

No. 13868.

Supreme Court of Utah.

July 1, 1975.

Ralph J. Marsh, of Backman, Clark & Marsh, Albert J. Colton, Salt Lake City, for defendants and appellants.

Harry D. Pugsley, Ned Warnock, Salt Lake City, for plaintiff and respondent.

HENRIOD, Chief Justice:

Appeal from a decree quieting title to real property in Summit County, Utah. Reversed, with instructions to dismiss plaintiff's complaint. Costs on appeal to defendants.

The defendants, Butkovich, claimed title to the subject property through a Summit County deed dated July 6, 1964,[1] after the county auditor had transferred the title thereto to Summit County for nonpayment of taxes by the record owner or owners or anyone else. Defendants Butkovich have paid the taxes ever since. Plaintiff Colman also has paid the taxes *but only since 1969* to the time of this litigation, which payments were made after Colman claimed title, by virtue of a 1968 self-serving *affidavit* signed by his asserted Grantor (hereinafter mentioned) which concededly is the only written instrument, either recorded or unrecorded, upon which he, Colman, personally did or could base his fee title.[2] That affidavit also was the only evidence of or basis for a warranty deed executed by Banks to Colman, and the only evidence of title in Banks or Colman in this record.

Plaintiff in this case has attempted in most part to render inviolate a title in himself by condemning that of those whom he sued. He reveals this conclusion in the only two points he asserts on appeal: I.) That defendants' deeds from the County were void for lack of specificity in description; and II.) That defendants gained nothing by an exchange of deeds to clarify the description of defendants' property,— which latter point we think is inapropos.

---

1. Reciting that "The above property was sold for delinquent taxes for the years 1910, 1911, 1912 and 1935 to 1939 inclusive."

2. Except for what we think was an abortive and sort of interloper and factually baseless second-thought claim under Title 57-9, Utah Code Annotated 1953.

■ Almost the entire brief of plaintiff is devoted to an attack on defendants' title, but little or nothing to the defense of his own. The basic problem here involved is obfuscated by plaintiff's circuitous attempt to erode defendants' claim with an effort to build on sand some kind of bulwark designed to defeat and circumvent a very simple, but one of the most impregnable estate and common law concepts of land tenure, to the effect that: One cannot prevail on the weakness of his adversary's title, but only on the strength of his own. Such concept plaintiff seems to skirt and ignore.

We need not concern ourselves,—as the plaintiff did in his brief,—about affirming the court because he saw the witnesses and weighed their credibility, etc. Such statements can be apropos or not, depending on the particular circumstances of either a particularly controversial or noncontroversial case,—but there is not any controversy here, since the recorded and/or conceded facts, relating to the muniments of title aspects of this, a real property case, are admitted and conceded by the plaintiff to the effect that:

On October 19, 1936, there existed the *Assets Corporation* that everyone conceded owned the subject property. It, nor anyone else, ever paid any taxes on the property after that date, except defendants, and Colman, who did in 1968. Summit County obtained *unquestioned* title to the property for nonpayment of taxes, and sold it or purported to sell it to Butkovich in 1964, who has paid taxes thereon ever since. Plaintiff says such deed was void because it was vague in description. This assertion seems premature and a stranger to this litigation, since, as stated above, the plaintiff, before asserting it, first must prove his own good title,—which he has failed to do.

■ All that the plaintiff can offer which conceivably could be probative of good title, is the *affidavit* mentioned in which his alleged predecessor in title, one Banks, in a self-serving statement, said that on *October 19, 1936,* (up until which time for a number of years it or no one else had paid the taxes), the Assets Corporation, *at a regular directors meeting,* transferred to him, Banks, for the *purpose* of 1) paying obligations, 2) disposing of remaining assets of the corporation, and 3) of disbursing the proceeds *to the stockholders.*[3] Proof of anything said in the affidavit is totally lacking.

Under no circumstances can such affidavit initiate a title, (but a tax deed can). It is neither a conveyance nor a transfer of marketable title in any sense of the word, —statutory or otherwise. Even if, by any stretch of the imagination, it could be so construed, the affiant would be precluded since its signator would have lost out by nonpayment of taxes himself,—and the auditor's deed to the County long since had placed the title in the County,—*not* in Banks. The litigation here, under such circumstances, hardly could prevail where Summit County, the owner, was *not named a party here.*

Although it is unnecessary for this decision, it appears that the affidavit of Banks, upon which he based his title, may have had a flavor of falsity in it, since, in a letter in his own handwriting, where he wrote concerning the possible sale of this property, dated September 20, 1968, just six weeks prior to his Warranty Deed, he candidly volunteered that "I've thought this over and I think we would get into a hell of a mess trying to prove Park City Townsite" transferred the property to "Assets Corp. and the Assets Corp. had sold everything left to me for $1.00."

3. It is significant to note that even *after* this directors' meeting, neither the Assets Corporation, nor Banks, as Trustee (or otherwise), nor anyone else paid any taxes until the Warranty Deed given by Banks to plaintiff in 1968,—long after Summit County became the owner by Auditor's Deed,—the efficacy of which is not challenged; and it is further significant that this suit was commenced two and one half years after such date, and after the claimed grantors' lips were sealed by death.

Besides, the official minutes of Assets Corporation, signed by its Secretary and President, dated October 19, 1936, quite clearly negate Banks' affidavit when they do not even mention him, and as clearly show that the Secretary, one Critchlow (not Banks), was instructed to take steps to *reinstate* the company in good standing, *redeem some of the company's mining claims* from tax delinquencies, to *ascertain the status of a mortgage,* and a *contract,* and that *the President* of the company, Mr. Ferry, *be authorized to secure a bank loan,* secured by a note,—followed by the familiar interdiction that "There being no further business, the meeting adjourned."

If, for no other reason stated above, we think that the documentary evidence in this case having to do with source of title, impels us to state that our recent decision of State v. Thompson, 17 Utah 2d 412, 413 P. 2d 603 (1966), is dispositive here.

Some of the trial court's language makes it appear that the plaintiff someway could bottom his rights on some sort of "color of title," which was nonexistent since plaintiff did not have even a similative of title. The trial court, for some reason, emphasized what we think was an unwarranted conclusion that defendants' document of transfer from Summit County, namely, the County Deed, had a vague description. Expert testimony was to the effect that the description closed at a border line of Park City Townsite, by a well known and commonly used abbreviation of "P. C." to describe the townsite situate in Summit County.

We are convinced that the plaintiff's claim is unsupported by fact or simple legal and equitable principles, and we are impelled to reverse the trial court, which we do, with instructions to dismiss the complaint.

ELLETT, CROCKETT and TUCKETT, JJ., concur.

MAUGHAN, J., concurs in the result.