JAMES CONSTRUCTORS,
INC., Plaintiff,

v.

SALT LAKE CITY CORPORATION,
Defendant.

SALT LAKE CITY CORPORATION,
Plaintiff,

v.

JAMES CONSTRUCTORS,
INC., Defendant.

INDUSTRIAL INDEMNITY COMPANY,
Cross–Claimant, Third–Party
Plaintiff and Appellee,

v.

HOOD CORPORATION, et al., Cross
and Third–Party Defendants and
Appellant.

No. 930452–CA.

Court of Appeals of Utah.

Dec. 21, 1994.

---

Robert M. Anderson, Bruce Wycoff and William H. Pruitt, Salt Lake City, for appellant.

Scott Daniels, Salt Lake City, for appellee Indus. Indemnity.

Before BILLINGS, P.J., and BENCH and WILKINS, JJ.

BILLINGS, Presiding Judge:

This case evolves out of more than seven years of litigation between Salt Lake City Corporation (SLCC) and James Constructors, Inc. (James), which ended in settlement in 1992. Hood Corporation (Hood), James's parent company, appeals from the trial court's judgment. Following an evidentiary hearing, the court awarded Industrial Indemnity Company (Industrial), James's surety, attorney fees incurred in the protracted litigation and prejudgment interest on those fees. We affirm in part, reverse in part, and remand.

### FACTS

We recite the facts in a light most favorable to the trial court's findings. *Ohline Corp. v. Granite Mill,* 849 P.2d 602, 603 (Utah App.1993). On April 15, 1981, Hood and B.M. Laulhere (an individual indemnitor, since deceased) entered into an indemnity agreement with Industrial (the Agreement), promising to hold Industrial harmless from "any and all liabilities, claims, demands, losses, damages, costs, attorneys fees, judgments and expenses of whatever kind or nature" it might sustain as a result of issuing construc-

tion bonds for work performed or to be performed by James. In reliance on the Agreement, Industrial issued contractor performance and payment bonds in connection with a contract between James and SLCC for the construction of a large underground water transmission pipeline. The face amount of the bonds was $1,128,481.

In April 1984, SLCC terminated James's contract, claiming James had not performed satisfactorily. When Industrial learned of the termination, it employed Dennis A. Norton of the law firm of Snow, Christensen & Martineau to conduct an initial factual and legal investigation of the circumstances surrounding James's termination.

On June 28, 1984, SLCC filed suit against James and Industrial, seeking damages in excess of $2 million. Thereafter, pursuant to the Agreement, Mr. Norton tendered Industrial's defense to Reed Brown, counsel for James, limiting his involvement to monitoring the case, meeting periodically with Mr. Brown, and providing research and other assistance as requested or needed.

On June 24, 1987, Mr. Brown withdrew as James's counsel and tendered back Industrial's defense to Mr. Norton. Mr. Norton later testified that it was his understanding that Mr. Brown withdrew because he was unable to come to an agreement with Hood about legal fees he was owed.

On August 6, 1987, Mr. Norton sent a letter to Hood demanding that Hood make satisfactory arrangements to undertake Industrial's defense. Later that same month, Mr. Brown telephoned to request that Mr. Norton retender Industrial's defense; however, Mr. Norton informed Mr. Brown that Industrial intended to enter its own defense unless Hood posted collateral sufficient to protect Industrial from any prospective loss or judgment. By August 27 no collateral had been posted, and Industrial entered its appearance in the action through its own counsel.

Industrial filed an amended answer to SLCC's amended complaint on September 21, 1987. The amended answer raised two defenses in addition to those already raised by James. Industrial also filed a crossclaim

and third-party complaint against James and Hood, seeking indemnification and enforcement of its rights under the Agreement.

On April 28, 1988, Industrial, Hood, and Laulhere entered into a stipulation resolving the indemnity claims on the crossclaim and third-party complaint (the Stipulation). In the Stipulation, Industrial agreed not to require Hood or Laulhere to post collateral, while Hood and Laulhere agreed that, upon Industrial's ex parte application, "immediate and final judgment in like amount over in favor of Industrial and against Indemnitors Hood and Laulhere" would be entered should SLCC prevail in the underlying litigation. Hood further agreed that Industrial would be entitled to judgment against Hood and Laulhere for Industrial's costs and reasonable attorney fees, subject to Hood's and Laulhere's right to request an evidentiary hearing with respect to the reasonableness of the claimed costs and fees. Finally, under the Stipulation, all parties agreed "to be bound by the Court's determination of reasonableness."

After entering into the Stipulation, Industrial continued to be represented by its separate counsel. However, Industrial limited its involvement to providing support and assistance until October 1990, when counsel for Hood, James, and Industrial agreed that Industrial would attempt to reassert its independent defenses. Industrial increased its activity in this regard, but subsequently reverted to its prior level of limited involvement. Industrial finally retendered its defense to Hood on August 2, 1991.

Following extended pretrial litigation, SLCC and Hood ultimately reached settlement on SLCC's contract claims, and on November 27, 1991, the parties entered into a stipulation dismissing all claims and actions between SLCC and the defendants (James, Hood, and Industrial). Under terms of the stipulation and the related order, Industrial reserved its rights against James, Hood, and Laulhere.

Industrial filed a motion for a judgment of attorney fees against Hood on August 6, 1992. Hood opposed the motion, claiming that the attorney fees Industrial requested were unreasonable. The trial court granted Industrial's motion by minute entry on December 23, 1992. Hood responded by requesting an evidentiary hearing in accordance with the Stipulation. The court granted Hood's request.

At the conclusion of the one-day hearing, the court found that Industrial's requested fees were both reasonable and necessary and ruled that Industrial was entitled to recover from Hood $115,177.61 in attorney fees and costs, and $56,139.23 in prejudgment interest on those fees. Hood appeals.

## I. REASONABLENESS OF ATTORNEY FEES

### A. The Stipulation

■ Industrial argues on appeal that because Hood agreed in the Stipulation to be bound by the trial court's determination of reasonableness, "Hood has no business before this court." Hood responds that the Stipulation was not intended to bar its appeal of the trial court's *legal analysis* of the right to fees.

The Stipulation provides at paragraph eight, with our emphasis:

> Independent of and in addition to the amount of any judgment over against Indemnitors as outlined in paragraph 7 above, Industrial Indemnity shall be entitled to further judgment against Hood and Laulhere, jointly and severally, upon motion and supporting affidavit, for Industrial's costs and reasonable attorneys fees incurred in this action or otherwise in connection with the described bonds furnished to, for, or at the request of James, Hood or Laulhere, *subject only to rights of Hood and Laulhere to request a hearing with respect to the reasonableness of the claimed costs and attorneys fees. All parties agree to be bound by the Court's determination of reasonableness.*

The clear import of this language is that the parties agreed to be bound by the trial court's factual findings with respect to the reasonableness of Industrial's claimed attorney fees. However, no reference is made here or elsewhere in the Stipulation to whether an appeal could be taken should

either party wish to challenge the legal correctness of the trial court's determination.

In contrast stands the language by which parties to a stipulation waived their right of appeal in *C.G. Horman Co. v. Lloyd,* 28 Utah 2d 112, 499 P.2d 124 (1972). In *Horman,* the stipulation provided that the parties would "abide by the decision of the District Court," *and* that "no appeal will be taken to the Supreme Court." *Id.* at 114, 499 P.2d at 125. While in *Horman* the parties explicitly agreed not to appeal the district court's decision, in this case the parties did not. Had they so desired, these sophisticated parties could have stated expressly their intention to waive the right of appeal, as did the parties in *Horman.*

We conclude that the relevant language is simply an agreement to be bound by the trial court's factual determinations with respect to the reasonableness of the requested attorney fees, but that it does not constitute a waiver of the right to appeal the legal correctness of the trial court's decision. We therefore hold the parties to the trial court's findings of fact, in accordance with the Stipulation, and merely review whether the trial court relied upon the appropriate legal standard to conclude that "[t]he fees and costs expended by Industrial, as set forth in the statements of Snow, Christensen & Martineau, were both reasonable and necessary."[1]

### B. The Legal Standard for Determining Reasonableness of Attorney Fees

Hood argues the trial court applied the wrong legal standard in arriving at its award of attorney fees. Essentially, Hood contends

the trial court erred in not applying a distinct standard for assessing the reasonableness of attorney fees awarded under an indemnity agreement.

While several Utah cases list factors to be considered in assessing the reasonableness of attorney fees, *see, e.g., Baldwin v. Burton,* 850 P.2d 1188, 1199–1200 (Utah 1993); *Dixie State Bank v. Bracken,* 764 P.2d 985, 990 (Utah 1988); *Cabrera v. Cottrell,* 694 P.2d 622, 624–25 (Utah 1985); *Trayner v. Cushing,* 688 P.2d 856, 858 (Utah 1984), no Utah case delineates distinct factors to be considered in the indemnity context. Cases from other jurisdictions, however, have isolated factors deemed relevant to probing the reasonableness and necessity of a surety's incurred attorney fees, given the identity of interest between principal and surety in the indemnity context. These factors include: (1) the amount of risk to which the surety was exposed; (2) whether the principal was solvent; (3) whether the surety called on the principal to deposit with it funds to cover the potential liability; (4) whether the principal, on demand by the surety to deposit with it the amount of the claim, refused to do so; (5) whether the principal hired the attorney for both himself and the surety; (6) whether the principal notified the surety of the hiring of the attorney; (7) the competency of the attorney hired by the principal; (8) the diligence displayed by the principal and his attorney in the defense; (9) whether a conflict of interest exists between the parties; (10) the attitude and cooperativeness of the surety; and (11) the amount charged and diligence of the attorney hired by the surety.

1. Hood also argues that "[t]he Constitution unambiguously and explicitly gives Hood 'an appeal of right' from [Judge Young's] judgment." A stipulation purporting to waive this constitutional right of appeal, Hood argues, "does not free this Court from its constitutional duty" to review the trial court's judgment.

 The Utah Supreme Court directly addressed whether parties may waive their right of appeal by stipulation in *C.G. Horman Co. v. Lloyd,* 28 Utah 2d 112, 499 P.2d 124 (1972). The parties in *Horman* agreed, by written stipulation, to determine rights under an initial contract by suit in the district court and "to abide by the decision of the District Court and no appeal will be taken to the Supreme Court." *Id.* at 114, 499 P.2d at 125. The supreme court held: "The agreement

of the parties not to appeal is valid and should prevail, and we so hold." *Id.* The court emphasized that the provision was not contrary to public policy, explaining:

> Waiver of appeal is accomplished every day, as is waiver of a jury trial.... Accused persons frequently waive both such constitutional rights, which parallels those cases where we have said that with respect to points raised on appeal for the first time in civil cases, the appellant has waived his right of review.

*Id.* at 115, 499 P.2d at 126; *accord Home Sav. & Loan v. Aetna Casualty & Sur. Co.,* 817 P.2d 341, 366 (Utah App.1991). In light of this authority, it is clear that the Utah Constitution does not bar a knowing and intelligent waiver of the right of appeal.

*See Perkins v. Thompson,* 551 So.2d 204, 210 (Miss.1989); *Central Towers Apartments, Inc. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789, 799–800 (1969).

■ While recognizing the utility of several of these factors, we conclude that existing Utah law is sufficient for determining the reasonableness of attorney fees incurred in the indemnity context. In *Dixie State Bank,* the Utah Supreme Court, after reviewing the current.status of Utah law on attorney fees, stated:

Although all of the above factors may be explicitly considered in determining a reasonable fee, as a practical matter the trial court should find answers to four questions:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank,* 764 P.2d at 990 (footnotes omitted). In accordance with these guidelines, we hold that if the indemnity context presents "circumstances which require consideration of additional factors," then the trial court ought to consider any additional factors that might be relevant. We reiterate, however, that "trial courts enjoy broad discretion in evaluating evidence to determine what constitutes a reasonable fee." *Id.* at 989.

■ Having clarified the applicable legal standard, we must now determine whether the trial court's findings of fact reflect reliance upon this standard.[2] We conclude that they do.

The trial court outlined the legal work Snow, Christensen & Martineau actually performed for Industrial and found it reasonable in terms of hours spent and rates charged. In addition, the court made abundant findings with respect to the gravamen of Hood's complaint—the necessity of the work Snow, Christensen & Martineau performed. The court found:

10. On or about June 24, 1987, C. Reed Brown withdrew as Industrial Indemnity's counsel in this action under the prior tender of defense and tendered back the Industrial Indemnity defense to Snow, Christensen & Martineau. At that time, Mr. Brown told Norton that his withdrawal was prompted by James' likely insolvency, and an inability to come to agreement with James' parent company, Hood Corporation, concerning payment of considerable outstanding legal fees owed to Mr. Brown.

. . . .

14. Although Hood had provided a financial statement showing it had a large net worth, Industrial Indemnity was justifiably concerned as to whether Hood would adequately protect the interests of Industrial. These concerns were based upon the fact that James, the bond principal, was without assets; that Hood had paid very little attention to the Salt Lake City litigation even though its exposure approached three million dollars; that Hood did not list this very significant and dangerous litigation in its financial statement; that Hood had been reluctant to pay Mr. Brown's attorney's fees, even though Mr. Brown had vigorously defended james [sic] and had also accepted tender of the Industrial defense; that the defense of Industrial Indemnity had been tendered back to Industrial; Hood's stubborn refusal to post collateral or to provide other adequate and acceptable security to Industrial; and Hood's refusal to authorize or participate in settlement negotiations with Salt Lake City Corporation, even though massive failures had occurred in the pipeline project and the City had removed and re-laid virtually the entire pipeline. Under these circumstances, it was not unreasonable for Industrial to determine that it was neces-

---

2. We need not address Hood's objections to certain of the trial court's findings of fact. Hood waived its right to so object by agreeing in the

Stipulation to be bound by the trial court's determination of reasonableness.

sary to defend itself in the litigation to protect and preserve its interests.

. . . .

17. The firm of Snow, Christensen & Martineau [after Industrial and Hood entered into the Stipulation] limited its participation in the case until October of 1990, when it was agreed among counsel for Hood, James and Industrial that Industrial would attempt to re-assert its independent defenses to the suit. Counsel for defendants determined that if Industrial Indemnity were successful in that effort, the success would inure to the benefit of the indemnitors, including Hood. For a brief period of time following this October 1990 agreement, and as part of a pretrial effort to define and preserve issues for trial, Snow, Christensen & Martineau was involved in the case in asserting these defenses. The decision to more heavily involve Industrial and its counsel in the case was reasonable under the circumstances and was agreed to by James and Hood. These findings duly consider several additional factors relevant to the particular circumstances of the indemnity relationship between Hood and Industrial.

In sum, the trial court applied the correct legal analysis in determining the reasonableness of attorney fees in this case. We therefore affirm the trial court's award of attorney fees.

## II. PREJUDGMENT INTEREST[3]

■■■ Next, Hood argues that the trial court erred in awarding prejudgment interest on the attorney fees incurred by Industrial. Hood contends that the prejudgment interest award was improper because the fees remained unliquidated until the trial court determined the reasonableness of the fees. Entitlement to prejudgment interest presents a question of law, which we review for correctness. *Andreason v. Aetna Casualty & Sur. Co.*, 848 P.2d 171, 177 (Utah App.1993).

■■■ Prejudgment interest may be awarded when appropriate to provide full compensation for actual loss. *Canyon Country Store v. Bracey*, 781 P.2d 414, 422 (Utah 1989); *Fell v. Union Pac. Ry.*, 32 Utah 101, 88 P. 1003, 1005 (1907). The award is proper if the loss is fixed as of a definite time and the interest can be calculated with mathematical accuracy. *Shoreline Dev., Inc. v. Utah County*, 835 P.2d 207, 211 (Utah App. 1992). Conversely, when damages are uncertain or speculative until fixed by the factfinder, Utah courts have refused to award prejudgment interest.[4]

Three Utah cases involve prejudgment interest on attorney fees. In the first case, *First Security Bank of Utah v. J.B.J. Feedyards, Inc.*, 653 P.2d 591 (Utah 1982), the Utah Supreme Court affirmed, without analysis, a trial court's award of prejudgment interest on attorney fees. *Id.* at 600. The case evolved out of a wrongful attachment action and a subsequent action for damages incident to the wrongful attachment. The trial court awarded the injured party its attorney fees incurred in quashing the writ of attachment, but denied the injured party's request for attorney fees incurred in litigating the damages. The supreme court affirmed the award, reiterating its 1921 holding that " '[in] cases where the property of the defendant is unnecessarily and unlawfully interfered with, ... attorney's fees are allowed only for the purpose of having the property

---

3. We review the trial court's award of prejudgment interest, rather than holding Hood bound by the trial court's determination, because the Stipulation governed only the reasonableness of the attorney fees. *See C.G. Horman Co. v. Lloyd,* 28 Utah 2d 112, 115, 499 P.2d 124, 126 (1972).

4. Thus, Utah courts have upheld the denial of prejudgment interest on damages grounded in loss of the agricultural use of land, *Smith v. Linmar Energy Corp.*, 790 P.2d 1222, 1226 (Utah App.1990), and damages grounded in lost profits, *Canyon Country Store*, 781 P.2d at 422; *Anesthesiologists Assoc. v. St. Benedict's Hosp.*, 852 P.2d 1030, 1042 (Utah App.1993), *vacated on other grounds*, 884 P.2d 1236 (Utah 1994). Similarly, Utah courts have upheld the denial of prejudgment interest in actions seeking equitable relief, such as restitution of payments made prior to default and forfeiture, *Bellon v. Malnar*, 808 P.2d 1089, 1097 (Utah 1991), damages recoverable in quantum meruit, *Bailey–Allen Co. v. Kurzet*, 876 P.2d 421, 427 (Utah App.1994), detrimental reliance on a promise, *Andreason*, 848 P.2d at 178, and unjust enrichment, *Shoreline Dev., Inc.*, 835 P.2d at 211.

released from such wrongful interference and to have the same returned to the owner.'" *Id.* at 597 (quoting *St. Joseph Stock Yards Co. v. Love*, 57 Utah 450, 464, 195 P. 305, 311 (1921)). The court went on to approve the lower court's award of prejudgment interest on the awarded fees, noting that they were fixed as of the time of the claimed damage. *Id.* at 600.

However, *J.B.J. Feedyards* is not determinative of this appeal. In *J.B.J. Feedyards*, the court awarded attorney fees incurred in defending against a wrongful attachment. The award was grounded in the common law principle that a party defending against a wrongful attachment may recover attorney fees expended in having unlawfully-interfered-with property released and returned. *See St. Joseph Stock Yards Co.*, 57 Utah at 464, 195 P. at 311. The *reasonableness* of the fees was not at issue. *J.B.J. Feedyards*, 653 P.2d at 597.

Nor does the second Utah case involving prejudgment interest on attorney fees, *Canyon Country Store*, provide authoritative precedent. In *Canyon Country Store* the court affirmed a denial of prejudgment interest on attorney fees and lost profits, but set forth its reasoning only with respect to the lost profits aspect of the decision. *Id.* at 422. It is therefore impossible to determine the court's rationale with respect to the attorney fees award.

Finally, this court briefly considered the issue of prejudgment interest on attorney fees in *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Assoc.*, 789 P.2d 52 (Utah App.1990). In *Parents Against Drunk Drivers*, an attorney sued to recover fees he claimed were owed him under a contingency fee agreement. This court remanded to the trial court to determine whether the agreement was enforceable and, if not, whether the parties intended to reactivate an hourly attorney fee contract previously in effect. *Id.* at 58. Barring either of these eventualities, we held that the attorney was nonetheless entitled to a reasonable fee on an implied contract theory, *id.*, but that prejudgment interest on such a quantum meruit type of award "would be improper." *Id.* at 59.

*Parents Against Drunk Drivers* is closest to the instant case. In *Parents Against Drunk Drivers*, we indicated that when the court must determine what the attorney fees award will be, based on what is reasonable in quantum meruit, prejudgment interest on the fees is improper. Conversely, we suggested, prejudgment interest on a fixed amount set forth in a valid attorney fees agreement is not improper. *See id.* However, neither *Parents Against Drunk Drivers* nor any of the other above-cited Utah cases directly addresses the precise question before this court—that is, whether, when a contract provides for the payment of reasonable attorney fees incurred by a surety in defending an action, prejudgment interest should be allowed from the date these fees are incurred, even though an ultimate determination of the reasonableness of the fees is left to a fact-finding court. We therefore look to instructive authority from courts in other jurisdictions.

Other state and federal courts have consistently denied prejudgment interest awards on attorney fees when payment of the fees is contingent on a court's determination of their reasonableness. In an analogous case, *United States v. Hardage*, 985 F.2d 1427 (10th Cir.1993), the Tenth Circuit Court of Appeals reversed the district court's award of prejudgment interest on attorney fees from the time payments on the fees were made. The district court reasoned that the attorney fees were certain as of the date of payment and that prejudgment interest was therefore appropriate. The court of appeals, however, noted that "[a]n award of attorneys' fees is not a sum certain where the reasonableness of those fees is still to be determined by the trial court," *id.* at 1438, and held that "[b]ecause ... the district court must determine the reasonableness of the legal expenses underlying [the attorney fees], the district court's award of prejudgment interest is reversed." *Id.*

The Fifth Circuit Court of Appeals applied similar reasoning in *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398 (5th Cir. 1989). Applying Texas law, the court noted that an award of statutory prejudgment interest was proper only when " 'the sum pay-

able can be ascertained with reasonable certainty.'" *Id.* at 401 (quoting *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 567 (Tex.1984)). Emphasizing that both liability for and amount of attorney fees had been hotly contested at trial, the court concluded that the fee invoices did not fix "'a measure by which the sum payable [could] be ascertained with reasonable certainty.'" *Id.* at 402 (quoting *La Sara Grain Co.,* 673 S.W.2d at 567).[5]

In the instant case, Hood did not contest the reasonableness of the attorney fees Industrial requested in terms of the hourly rates charged, but strenuously argued that the work done was unnecessary and duplicative. At the evidentiary hearing, Hood's expert witness testified that Industrial was only entitled to $51,246.97 in attorney fees for expenses necessarily incurred, instead of the $109,957.61 in fees that Industrial requested based on paid billing statements. Ultimately, the trial court rejected the testimony of Hood's expert witness. The court awarded Industrial most of the amount requested, but deducted $5,148.00 from the total for fees and costs Industrial conceded did not relate specifically to the SLCC matter.[6]

In light of the parties' agreement that attorney fees would be fixed only when found reasonable by the trial court, and the foregoing authority, we conclude that Industrial's attorney fees award was not fixed until the trial court determined that the fees were reasonable. We therefore hold that Industrial was not entitled to prejudgment interest on its attorney fees.

III. ATTORNEY FEES INCURRED ENFORCING INDEMNITY AGREEMENT AND ON APPEAL

In addition to awarding Industrial its attorney fees and costs incurred in the underlying litigation, the trial court awarded Industrial $5,220.00—the "reasonable attorneys fee in preparing for this hearing." Hood argues that Industrial is not entitled to recover the fees it incurred in preparing for the hearing, nor those incurred in this appeal from the judgment rendered pursuant to that hearing.

Utah courts have not considered whether an indemnitee is entitled to recover attorney fees attributable solely to litigation of the indemnity issue. Under the general and "virtually unanimous rule," *Jones v. Strom Constr. Co.,* 84 Wash.2d 518, 527 P.2d 1115, 1119 (1974), an indemnitee may recover only those attorney fees reasonably incurred in defending the claim indemnified against; the indemnitee may not recover attorney fees incurred in establishing the right to indemnity. *See Weathersby v. Conoco Oil Co.,* 752 F.2d 953, 959 (5th Cir.1984); *Post Houses, Inc. v. Fireman's Fund Ins. Co.,* 469 So.2d 863, 864 (Fla. Dist.Ct.App.), *review denied,* 478 So.2d 54 (Fla.1985); *Chadwick–BaRoss, Inc. v. Martin Marietta Corp.,* 483 A.2d 711, 717 (Me.1984). Nevertheless, when the indemnification obligation arises out of a contract, attorney fees incurred in establishing the right to indemnity may also be recovered if the agreement so provides. *See Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306, 316 (2d Cir.1985); *Marsh, Day & Calhoun v.*

---

5. See also the following cases, which accord with the reasoning of *Hardage* and *Thomasson: In re D.W.G.K. Restaurants, Inc.,* 94 B.R. 692, 692–93 (Bankr.S.D.Cal.1988) (denying bank recovery of prejudgment interest on disputed attorney fees, noting that "where a contract provides for attorneys' fees without specifying a particular sum, the amount to be awarded is in the discretion of the court"); *Bremshey v. Morrison,* 621 So.2d 717, 718 (Fla.Dist.Ct.App.1993) ("Because the trial court's judgment had the effect of simultaneously determining appellant's liability for, and setting the amount of, attorney's fees, the trial court erred in awarding prejudgment interest in this case."); *Kadillak v. Montana Dep't of State Lands,* 198 Mont. 70, 643 P.2d 1178, 1182 (1982) (holding statute did not entitle plaintiffs to prejudgment interest on attorney fees because "[t]he

determination of reasonable attorney fees in this case was within the discretion of the District Court and the amount was not definite or capable of being calculated with certainty prior to judgment"); *Tri–M Erectors, Inc. v. Donald M. Drake Co.,* 27 Wash.App. 529, 618 P.2d 1341, 1346 (1980) ("The question of reasonableness of the attorneys' fees expended ... was determined by the jury. Until that was resolved by the jury, the claim was unliquidated."), *review denied,* 95 Wash.2d 1002 (1981).

6. It is not clear from the trial court's findings of fact and conclusions of law that $5,148.00 was in fact deducted from the figure representing the total attorney fees and costs.

*Solomon,* 204 Conn. 639, 529 A.2d 702, 709 (1987); *Morris v. Schlumberger, Ltd.,* 445 So.2d 1242, 1247 (La.Ct.App.), *writ denied,* 449 So.2d 1345 (La.1984); *Amazi v. Atlantic Richfield Co.,* 249 Mont. 355, 816 P.2d 431, 435 (1991).

 In this case, the agreement expressly provides that Industrial may recover any fees incurred in enforcing its general rights of indemnification:

> [I]f the Surety shall bring suit to enforce any obligation of the Indemnitors under this instrument, the Indemnitors shall be liable for the costs and expenses, including fees of attorneys, incurred in prosecuting such suit, and such costs and expenses shall be included in any judgment that may be rendered against the Indemnitors.

However, Hood contends that Industrial is not entitled to recover the attorney fees it incurred in connection with the evidentiary hearing, or on appeal, because the Stipulation contains no such provision, and the Agreement merged into the Stipulation, extinguishing all obligations under the Agreement.

"The general rule in Utah is that 'one contract will not merge into another unless it is plainly shown that that was the intent of the parties; and this is usually where the later contract fully covers an earlier one.'" *Horman v. Gordon,* 740 P.2d 1346, 1351 (Utah App.1987) (quoting *Foote v. Taylor,* 635 P.2d 46, 48 (Utah 1981)). The parties' intent "is to be ascertained first by looking within the four corners of the agreement itself." *Foote,* 635 P.2d at 48.

Hood refers us to the following language found in paragraph six of the Stipulation: "[T]he parties hereby agree to a complete resolution of the specified claims raised by Crossclaim/Third Party Complaint or otherwise related to Indemnitors' obligations of indemnity as hereinafter set forth." However, Hood overlooks the language with which paragraph six begins, namely: "It is the desire of the parties to this Stipulation to resolve *some* of the issues presented under the Indemnity Agreement and the Crossclaim/Third–Party Complaint without litigation . . . ." (Emphasis added.) Furthermore, the language Hood relies upon makes clear that the Stipulation purports to resolve only the "specified claims" it addresses. Attorney fees incurred in enforcing the right of indemnity is not such a claim, and is nowhere addressed in the Stipulation. In light of these facts, we find uncompelling Hood's argument that the parties to the Stipulation intended that the Stipulation supersede the Agreement, abolishing Hood's obligations under the Agreement.

Having determined that Hood remains bound by the obligations set forth in the Agreement, we look to that document. The Agreement expressly charges Hood with any attorney fees Industrial might incur in enforcing the right of indemnification. We hold that Industrial is therefore entitled to recover the attorney fees it incurred establishing the reasonableness of the fees for which it is entitled to be indemnified. *See Peter Fabrics,* 765 F.2d at 316.

 Industrial has also requested its attorney fees on appeal. Utah courts recognize that the prevailing party in a dispute over a contractual attorney fees provision is entitled to attorney fees on appeal. *Karapanos v. Boardwalk Fries, Inc.,* 837 P.2d 576, 578 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992); *Schuhman v. Green River Motel,* 835 P.2d 992, 998 (Utah App.1992); *Sprouse v. Jager,* 806 P.2d 219, 227 (Utah App.1991). Because we affirm the trial court's award to Industrial of its reasonable fees incurred in the underlying litigation, as well as those incurred in preparing for the evidentiary hearing, we remand to the trial court to award Industrial its reasonable attorney fees incurred on appeal.

## CONCLUSION

We affirm the trial court's award to Industrial of its attorney fees incurred in the underlying litigation. However, we reverse the trial court's award of prejudgment interest on those fees. Finally, we affirm the trial court's award to Industrial of its attorney fees incurred in establishing the reasonableness of the attorney fees for which it is entitled to be indemnified and remand to the

trial court to award Industrial its reasonable attorney fees incurred on appeal.

BENCH and WILKINS, JJ., concur.