2009 UT App 120

**FREE MOTION FITNESS, INC., a Utah corporation; and Icon Health & Fitness, a Utah corporation, Plaintiffs and Appellants,**

v.

**WELLS FARGO BANK WEST, NA; and Ground Zero Design, LLC, a Colorado limited liability company, Defendants and Appellees.**

No. 20080024–CA.

Court of Appeals of Utah.

April 30, 2009.

Steven G. Loosle, Salt Lake City, for Appellants.

Stephen C. Tingey and Elaina M. Maragakis, Salt Lake City, for Appellee Wells Fargo Bank West, NA.

R. Willis Orton and Ryan B. Frazier, Salt Lake City, for Appellee Ground Zero Design, LLC.

Before Judges THORNE, ORME, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Free Motion Fitness, Inc. (Free Motion) and Icon Health & Fitness (Icon) (collectively, the Buyer Parties) appeal from the trial court's orders granting summary judgment in favor of Wells Fargo Bank West, NA (Wells Fargo) and Ground Zero Design, LLC (Ground Zero) and dismissing the Buyer Parties' claims. We affirm.

## BACKGROUND

¶ 2 Ground Zero was engaged in the business of manufacturing exercise equipment. Ground Zero owned a cable-cross device used in the manufacture of that equipment. Because of its interest in the cable-cross device, Icon agreed to acquire certain assets held by Ground Zero. Icon formed a wholly-owned subsidiary, Free Motion, to hold those assets.[1]

### The Purchase Agreement

¶ 3 On December 19, 2000, the Buyer Parties entered into an Asset Purchase Agreement (the Purchase Agreement), whereby Free Motion bought all of Ground Zero's assets used in the manufacture of exercise equipment incorporating the cable-cross device. Icon was also a party to the Purchase Agreement as Free Motion's parent company. Pursuant to the Purchase Agreement, Ground Zero represented and warranted that "[Ground Zero] has good, valid and marketable title to the Assets" and that "no Intellectual Property ... infringes upon any rights owned or held by any other Person."

¶ 4 The Purchase Agreement further provides for indemnification by Ground Zero of the Buyer Parties as follows:

> [Ground Zero] agrees to indemnify ... the "Buyer Parties" [ ] and hold each of them harmless from ... any Losses which the Buyer Parties may suffer, sustain or become subject to, ... as a result of, arising out of, relating to or in connection with:
>
> (i) ... the breach of any representation or warranty made by [Ground Zero] ...;
>
> ....
>
> (v) any Liability of [Ground Zero] not assumed by [the Buyer Parties]....

### The Indemnity Agreement

¶ 5 As part of the closing on December 19, 2000, Ground Zero, Free Motion, and Wells Fargo, as the escrow agent, also executed an Indemnity Escrow Agreement (Indemnity Agreement). Pursuant to that agreement, Free Motion deposited $400,000 of the purchase price (the Escrow Fund) with Wells Fargo to be held and used to pay indemnified claims of the Buyer Parties that might arise during the first year after closing. Wells Fargo was then to disburse any remaining

---

1. At the time of the transaction, the Icon subsidiary that bought the assets was named Ground Zero Design Corporation. It later changed its name to Free Motion Fitness, Inc. We refer to the subsidiary as Free Motion throughout this opinion to avoid confusion with the seller, Ground Zero Design, LLC.

amounts according to the terms of the Indemnity Agreement.

### The Hoist Litigation

¶ 6 Approximately three months after closing, Hoist Fitness Systems, Inc. (Hoist) delivered a letter to the Buyer Parties, claiming that the cable-cross device infringed on a patent held by Hoist. After negotiations with Hoist proved unsuccessful and Ground Zero declined to address the matter, Free Motion filed a complaint in the federal district court of Utah, seeking a declaratory judgment that the cable-cross device did not infringe upon the Hoist patent. In response, Hoist asserted a counterclaim against Free Motion and also filed a third-party complaint against Icon, seeking an order enjoining any further infringement.

¶ 7 Pursuant to the Indemnity Agreement, the Buyer Parties sent a buyer's certificate (the Hoist Buyer's Certificate) to Wells Fargo, stating that "[i]n the event that the Hoist claim of infringement is successfully prosecuted," Ground Zero will be in breach of its warranty that the cable-cross device does not infringe on any rights held by any other person and will be subject to the indemnification obligations of the Purchase Agreement. The Hoist Buyer's Certificate also notified Wells Fargo of the Buyer Parties' position: "Such indemnification obligation includes any Losses which the Buyer Parties may suffer . . ., includ[ing] attorney[ ] fees and costs incurred in defending against [the Hoist] claim."

¶ 8 Although the Indemnity Agreement required Wells Fargo to forward a copy of the Hoist Buyer's Certificate to Ground Zero, as seller, Wells Fargo did not do so. Instead, Wells Fargo placed the certificate in its files without reading it. Nevertheless, on the same day they sent the Hoist Buyer's Certificate to Wells Fargo, the Buyer Parties also faxed a copy of it to Ground Zero.[2] Ground Zero did not respond to the certificate.

2. The Indemnity Agreement requires the Buyer Parties to deliver the certificate to both Wells Fargo and Ground Zero.

### The Escrow Fund Release

¶ 9 On the first business day after the one-year anniversary of the transaction, Ground Zero contacted Wells Fargo and requested that the Escrow Fund be released to it pursuant to the terms of the Indemnity Agreement. Despite the fact that the Hoist Buyer's Certificate remained unresolved, Wells Fargo released the Escrow Fund to Ground Zero. Wells Fargo admits that this release was in breach of the Indemnity Agreement.

### Final, Unappealable Judgment

¶ 10 A year and four months later, on April 11, 2003, the federal district court dismissed Hoist's claims against the Buyer Parties, finding that the cable-cross device did not infringe on Hoist's patent. Thirty days later, on May 11, 2003, that decision became final and unappealable. *See* Fed. R.App. P. 4.

### The Znetix Litigation

¶ 11 In a separate matter, the receiver for Znetix, Inc., sued Ground Zero, Icon, and Free Motion, claiming that Ground Zero had failed to deliver design services for which it had been paid by Znetix and that Icon and Free Motion were equally liable because they had purchased substantially all of Ground Zero's assets. On July 29, 2003, the Buyer Parties sent another buyer's certificate to Wells Fargo seeking indemnification for the Znetix claim (the Znetix Buyer's Certificate).[3] Eventually, the Znetix receiver released all claims against Ground Zero and the Buyer Parties in exchange for a settlement amount, $100,000 of which was paid by Icon.

### The Trial Court Proceedings

¶ 12 The Buyer Parties filed the complaint in this action, asserting claims against Wells Fargo for breach of the Indemnity Agreement and breach of fiduciary duty, and asserting claims against Ground Zero for indemnification pursuant to both the Purchase Agreement and the Indemnity Agreement. In turn, Wells Fargo asserted cross-claims against Ground Zero for contractual indem-

3. The Znetix Buyer's Certificate was filed a year and seven months after Wells Fargo released the Escrow Fund and three months after the Hoist decision became final and unappealable.

nification, equitable indemnification, and constructive trust. Ground Zero filed counterclaims, seeking a declaration that Wells Fargo and the Buyer Parties were estopped from making claims under the Indemnity Agreement and asserting a breach of contract claim against Wells Fargo. Eventually, the parties filed seven motions and cross-motions for summary judgment.

¶ 13 On June 2, 2006, the trial court held a hearing on the various motions for summary judgment, with the understanding that resolution of some of those motions would determine whether the court needed to reach others. The trial court subsequently granted Ground Zero's and Wells Fargo's motions for summary judgment against the Buyer Parties on the ground that, although Wells Fargo improperly released the Escrow Fund, the Buyer Parties could show no damage caused by that release. The trial court also granted Ground Zero's motion for summary judgment on Wells Fargo's claim for indemnification against Ground Zero with the exception that Wells Fargo's contractual claim of indemnification for the attorney fees and costs Wells Fargo incurred defending against the Buyer Parties' claims was not dismissed at that time.[4] In addition, the court denied the Buyer Parties' cross-motions against Ground Zero and Wells Fargo on the same issues. The trial court denied all remaining motions as moot. It did not resolve Ground Zero's counterclaims against the Buyer Parties, but those claims were subsequently dismissed without prejudice by stipulation of the parties.

¶ 14 The trial court's oral ruling was memorialized in two orders.[5] Because neither of them provides any information regarding the grounds for decision, we have reviewed the arguments on appeal with reference to the rulings as stated on the record at oral argument. *See* Utah R. Civ. P. 52(a) ("It will be sufficient if the . . . conclusions of law are stated orally and recorded in open court. . . .").[6]

## ISSUES AND STANDARD OF REVIEW

¶ 15 On appeal, the Buyer Parties contend that the trial court erred by (1) concluding that the Purchase Agreement did not require Ground Zero to indemnify the costs and fees incurred in successfully defending against the Hoist patent infringement claim; (2) deciding that the Hoist Buyer's Certificate is conditional; (3) determining that the Buyer Parties suffered no damage as a result of Wells Fargo's wrongful release of the Escrow Fund; (4) excusing Wells Fargo's improper release of the Escrow Fund, despite the fact that it did not read the Hoist Buyer Certificate; and (5) dismissing the Buyer Parties' claims notwithstanding the fact that Ground Zero failed to object to the Hoist Buyer's Certificate as required by the Indemnity Agreement.

¶ 16 "This court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610 (internal quotation marks omitted), *cert. denied*, 199 P.3d 367 (Utah 2008).

## ANALYSIS

I. The Purchase Agreement Does Not Mandate Indemnification of the Buyer Parties for Fees and Costs Incurred in Obtaining a Judgment of Noninfringement.

▮▮ ¶ 17 The Buyer Parties assert that, pursuant to sections 10.2—the Indemnifica-

---

4. Wells Fargo's remaining claim for contractual indemnification against Ground Zero and Ground Zero's counterclaim against Wells Fargo were later dismissed without prejudice by stipulation of the parties.

5. The first order (1) granted Wells Fargo's motion on liability, (2) denied the Buyer Parties' cross-motion against Wells Fargo, and (3) denied as moot the Buyer Parties' motion against Wells Fargo on the amount of damages. The second order (1) granted in part and denied in part as moot Ground Zero's motion on liability, (2) de-

nied as moot the Buyer Parties' cross-motion on liability, (3) denied as moot Ground Zero's motion on damages, and (4) denied as moot the Buyer Parties' cross-motion on damages.

6. Although we may search the record in an attempt to reconstruct the trial court's reasoning, the better and more reliable approach, particularly in a matter of this complexity, is for the trial court to explain its decision in a written memorandum decision or order.

tion Provision—and 10.4—the Defense of Claims Provision—of the Purchase Agreement, they were entitled to recover the attorney fees and costs incurred in defending against the Hoist patent infringement claim. In response, Ground Zero and Wells Fargo argue that the Purchase Agreement provides for indemnification only in the event of an actual breach of warranty, as defined in section 3.10. The trial court agreed that section 10.2 provides indemnification only for those claims successfully prosecuted against the Buyer Parties, thereby establishing an actual breach. The trial court further rejected the Buyer Parties' argument that section 10.4 supports their argument for indemnification related to the Hoist claim.

¶ 18 To determine which of these interpretations is correct, we examine the language of the agreements between the parties.

> When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling. If the language within the four corners of the contract is unambiguous ... a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law. A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.

*Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292 (omission in original) (citation and internal quotation marks omitted). Moreover, "[i]ndemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions." *Pavoni v. Nielsen*, 2000 UT App 74, ¶ 24, 999 P.2d 595.

¶ 19 The Buyer Parties assert that the Hoist claim itself triggered Ground Zero's warranty obligations in section 3.10 of the Purchase Agreement that "no Intellectual Property ... infringes upon any rights owned or held by any other Person." However, we agree with the trial court that simply lodging a claim that challenges a warran-

ty contained in section 3.10 is not sufficient to impose indemnification obligations on Ground Zero pursuant to the Purchase Agreement. Rather, the plain language of section 10.2 limits Ground Zero's indemnification obligations to "the *breach* of any representation or warranty made by [Ground Zero] in Article 3 of [the Purchase] Agreement." (Emphasis added.) Here, it was ultimately determined by the federal district court that there was no such breach.

¶ 20 Furthermore, if Ground Zero and the Buyer Parties had intended to indemnify the costs and fees incurred in defending against any claim that even asserts a breach of a representation or warranty, they could have done so. But "[w]e will not make a better contract for the parties than they have made for themselves." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 19, 52 P.3d 1179. The plain language of section 10.2 limits Ground Zero's indemnification obligations to the breach of a representation or warranty, something that was not established by Hoist. Consequently, the trial court was correct in dismissing the Buyer Parties' claims to recover the fees and costs incurred in successfully defending against the Hoist infringement claim.

¶ 21 Despite the express language of section 10.2 of the Purchase Agreement, the Buyer Parties contend that section 10.4 of that same agreement requires that Ground Zero reimburse them for attorney fees and costs. That provision states, in pertinent part, as follows:

> [I]f any action[ or] lawsuit ... shall be brought or asserted by any third party which, if adversely determined, would entitle the [Buyer Parties] to indemnity pursuant to this Article 10, ... *[Ground Zero] shall be entitled to participate in the defense* of such action[ or] lawsuit ... giving rise to the ... claim for indemnification *at its expense, and at its option (subject to the limitations set forth below)* shall be entitled to appoint lead counsel of such defense ...; provided that, as a condition precedent to [Ground Zero's] right to assume control of such defense, it must first:
>
>  . . . .

(b) furnish the [Buyer Parties] with reasonable evidence that [Ground Zero] is and will be able to satisfy any such liability; and provided, further, that *[Ground Zero] shall not have the right to assume control of such defense and shall pay the fees and expenses of counsel retained by the [Buyer Parties], if* the claim which [Ground Zero] seeks to assume control ... involves a claim to which the [Buyer Parties] reasonably believe[ ] *an adverse determination would be detrimental to or injure the [Buyer Parties'] reputation[s] or future business prospects ....*

(Emphases added and omitted.)

¶ 22 We agree with the trial court that section 10.4 does not require Ground Zero to indemnify the Buyer Parties against losses incurred in defense of the Hoist action. By its terms, section 10.4 applies only when Ground Zero exercises its option to control the defense of any claim that, if adversely determined, would entitle the Buyer Parties to indemnification. There is no suggestion that Ground Zero attempted to assume control over the Hoist claim. Indeed, the Buyer Parties brought the declaratory judgment action against Hoist because Ground Zero refused to address the allegations that the cable-cross device infringed the Hoist patent. Under these circumstances, the trial court was correct in concluding that section 10.4 is inapplicable.

¶ 23 Relying primarily upon *Peter Fabrics, Inc. v. S.S. "Hermes"*, 765 F.2d 306 (2d Cir. 1985), and *James Constructors, Inc. v. Salt Lake City Corp.*, 888 P.2d 665 (Utah Ct.App. 1994), the Buyer Parties alternately argue that the trial court's contract interpretations are contrary to binding concepts of indemnity and warranty law. In particular, the Buyer Parties assert that, in *James Constructors*, this court cited *Peter Fabrics* favorably and described the "virtually unanimous rule" that an indemnified party may recover attorney fees and costs incurred in defending an indemnified claim. *See James Constructors*, 888 P.2d at 673. While we continue to embrace our statement in *James Constructors*, we fail to see its application here.

¶ 24 Both the decision of the Second Circuit in *Peter Fabrics* and our decision in *James Constructors* address the right of an indemnified party to recover attorney fees and costs incurred in the defense of a claim that is covered by the express terms of an indemnity provision. Neither case, however, discusses the right to fees incurred in the defense of a claim that is not covered by the terms of a written indemnity agreement. *See Peter Fabrics*, 765 F.2d at 315 ("[A]n indemnitee may recover from his indemnitor attorney[ ] fees and expenses incurred in defending a claim as to *which he is indemnified* ...." (emphasis added)); *accord James Constructors*, 888 P.2d at 673. Because there was no actual breach of a representation or warranty established by the Hoist litigation, the express terms of the Purchase Agreement do not impose any obligation on Ground Zero to indemnify the Buyer Parties for the costs and fees incurred in that litigation. Consequently, neither *Peter Fabrics* nor *James Constructors* supports the Buyer Parties' claims under the Hoist Buyer's Certificate and the trial court was correct to enforce the contracts as written.[7]

## II. The Hoist Buyer's Certificate Was Conditioned upon a Finding that the Cable–Cross Device Infringes the Hoist Patent.

¶ 25 A critical part of the trial court's analysis was its conclusion that the Hoist Buyer's Certificate states "a conditional claim based on successful prosecution" by Hoist. In reaching that conclusion, the trial court relied upon the express language of the Hoist Buyer's Certificate. That certificate states as follows: *"In the event that* the Hoist claim of infringement is successfully prosecuted, such *will render* the foregoing

---

**7.** In an analogous decision, *Hanover Ltd. v. Cessna Aircraft Co.*, 758 P.2d 443 (Utah Ct.App.1988), we rejected a passive retailer's claim for implied indemnity against a manufacturer for the costs and fees incurred in successfully defending against a claim that the manufacturer's product was defective, stating, "The manufacturer must have introduced a defective product into the stream of commerce before it is liable for the retailer's attorney fees, costs, and expenses." *Id.* at 448.

[Ground Zero] representation [that no Intellectual Property infringes upon the rights owned by any other Person] *to be inaccurate and will subject* [Ground Zero] to the indemnification obligation of ... [the Purchase Agreement]." (Emphases added.) The underscored language belies the Buyer Parties' argument that the Hoist Buyer's Certificate made a present, unconditional claim against the Escrow Fund. Consequently, we agree with the trial court that a final judgment of infringement by the federal district court in the Hoist litigation was a condition precedent to the claim made in the Hoist Buyer's Certificate. We further agree with the trial court that the condition precedent to the Buyer Parties' claim under the Hoist Buyer's Certificate failed on May 11, 2003, when the Hoist litigation concluded with an unappealable judgment that is consistent with Ground Zero's representation that the cable-cross device did not infringe on the rights of any other person.

III. **As a Matter of Law, the Buyer Parties Have Not Been Damaged by Wells Fargo's Premature Release of the Escrow Fund.**

■ ¶ 26 Despite its receipt of the Hoist Buyer's Certificate, Wells Fargo released the Escrow Fund on the first anniversary of the transaction. Wells Fargo admits that it breached the Indemnity Agreement when it did so. Based on that release of the Escrow Fund, the Buyer Parties brought claims for breach of fiduciary duty and for breach of contract against Wells Fargo. The Buyer Parties also sued Ground Zero for breach of the Indemnity and Purchase Agreements for participating with Wells Fargo in releasing the Escrow Fund and for refusing to indemnify them. The trial court granted summary judgment on each of those claims, concluding, as a matter of law, that the Buyer Parties could not establish they were damaged by the release of the Escrow Fund.

¶ 27 In reaching that conclusion, the trial court relied first on the fact that the claims related to the Hoist Buyer's Certificate were not indemnified claims and second on the fact that the Hoist Buyer's Certificate was conditioned upon a judgment of patent infringe-ment in the Hoist litigation. Consequently, the trial court granted summary judgment in favor of Wells Fargo and Ground Zero.

¶ 28 As we have previously explained, *see supra* Part I, the Buyer Parties are not entitled to reimbursement of the costs and fees incurred in obtaining a judgment of noninfringement against Hoist. Consequently, even if the Escrow Fund had been retained indefinitely, the Buyer Parties could not recover any amounts related to that claim. Thus, we agree with the trial court that the Buyer Parties cannot prevail against Wells Fargo or Ground Zero on either a theory of breach of contract or breach of fiduciary duty relating to the Hoist Buyer's Certificate. *See Eleopulos v. McFarland & Hullinger, LLC,* 2006 UT App 352, ¶¶ 9, 17, 145 P.3d 1157 (affirming summary judgment for the defendant where the plaintiff made no showing of damages, a crucial element of a claim for breach of contract); *Shaw Res. Ltd., LLC v. Pruitt, Gushee & Bachtell, PC,* 2006 UT App 313, ¶¶ 22–23, 142 P.3d 560 (affirming summary judgment for the defendant where the plaintiff failed to show damages from the alleged breach of fiduciary duty).

¶ 29 Next, the Buyer Parties argue that, even if they could not recover under the Hoist Buyer's Certificate, they are entitled to be indemnified for the $100,000 they paid and the attorney fees and costs they incurred in defending and settling the Znetix claim. In response, Ground Zero and Wells Fargo argue that because the Znetix Buyer's Certificate was filed after the Escrow Fund had been depleted, it was ineffective to trigger any indemnification duty. The trial court agreed with Ground Zero and Wells Fargo and granted summary judgment in their favor on the Znetix Buyer's Certificate.

¶ 30 The Indemnity Agreement limits the Buyer Parties' right to file a buyer's certificate to "any time on or prior to the termination of this [Indemnity] Agreement." Thus, the resolution of the validity of the Znetix claim turns on whether the Indemnity Agreement would have terminated before the Znetix Buyer's Certificate was filed in July 2003. The Indemnity Agreement states, "This Agreement shall terminate (a) on the

date on which there are no funds remaining in the Escrow Fund or (b) by mutual consent signed by all the parties." The parties agree that there was not mutual consent to terminate the Indemnity Agreement. Consequently, the question before us is whether there would have been funds remaining in escrow when the Buyer Parties filed the Znetix Buyer's Certificate if Wells Fargo had complied with the Indemnity Agreement.

¶ 31 There are three provisions of the Indemnity Agreement that may affect the resolution of this issue. The first is paragraph 5(c), which states:

> (c) On the first business day following the first anniversary of the Closing Date (December 20, 2001), [Wells Fargo] shall transfer to [Ground Zero] from the Escrow Fund ... all remaining amounts in the Escrow Fund less the aggregate of all amounts claimed in all Buyer's Certificates delivered to [Wells Fargo] prior to such date (*to the extent such claims have not been resolved on or prior to such date*).

(Emphases added and omitted.) Paragraph 5(c) expressly relates to disposition of the Escrow Fund on the first anniversary of the closing. If any buyer's certificates were filed before that anniversary date, Wells Fargo was to disburse everything in the Escrow Fund except the amount necessary to cover those claims. The obligation to turn the Escrow Fund over to Ground Zero is limited by the language "to the extent such claims have not been resolved on or prior to [the anniversary date]." Here, because the first business day following the anniversary date fell on December 20, 2001, and the Hoist judgment did not become final and unappealable until over sixteen months later, Wells Fargo was required to retain the Escrow Fund to cover those claims. Consequently, we conclude that paragraph 5(c) of the Indemnity Agreement is inapplicable to our analysis.

¶ 32 The second and third provisions dealing with disposition of the Escrow Fund are paragraphs 5(d) and 5(e). Those paragraphs govern how the Escrow Fund could be disbursed if not done at the anniversary date. Paragraph 5(d) states, in pertinent part, as follows:

> (d) Notwithstanding any other provision of this Agreement to the contrary, if at any time *prior to the termination of the Escrow Fund [Wells Fargo] receives a final nonappealable judgment of a court of competent jurisdiction,* ... [Wells Fargo] *shall comply with such judgment,* award or instruction and *pay from the Escrow Fund, as instructed,* to [the Buyer Parties] or to [Ground Zero], the amount of cash so instructed.

(Emphases added.) Paragraph 5(d) requires Wells Fargo to disburse the Escrow Fund as instructed in a final judgment from a court of competent jurisdiction. There is nothing in the record to support that the Hoist judgment included any instructions concerning the Escrow Fund, as opposed to simply holding that the cable-cross did not infringe the Hoist patent. We therefore conclude that paragraph 5(d) is not controlling here.

¶ 33 The last relevant provision is paragraph 5(e), which states, in pertinent part, as follows:

> (e) Once all claims in all Buyer's Certificates *have been resolved* (either by agreement of [the Buyer Parties] and [Ground Zero] or *by a final nonappealable court judgment*) and all applicable payments paid to [the Buyer Parties], *[Wells Fargo] shall transfer* to [Ground Zero] from the Escrow Fund ... *all remaining amounts* in the Escrow Fund.

(Emphases added.) We agree with the trial court that when the Hoist litigation resulted in a judgment favorable to the Buyer Parties and thirty days had expired, making that judgment unappealable, the Hoist Buyer's Certificate was resolved because the condition precedent to the claim had failed. At that time, May 11, 2003, paragraph 5(e) required Wells Fargo to transfer all remaining amounts in the Escrow Fund to Ground Zero. Because the Znetix Buyer's Certificate was filed over two months later, on July 29, 2003, it would have been invalid even if Wells Fargo had not improperly released the Escrow Fund in December of 2001. Because the Buyer Parties could only file a buyer's certificate prior to the termination of the Indemnity Agreement and that termination would have occurred when all remaining

funds were transferred to Ground Zero, we agree with the trial court that the Znetix Buyer's Certificate was filed too late. Consequently, the Buyer Parties cannot show that they suffered any damage by the wrongful release of the Escrow Fund in December 2001.

### IV. Wells Fargo's Failure to Read the Hoist Buyer's Certificate Is Not Relevant.

¶ 34 The Buyer Parties next argue that even if the Hoist Buyer's Certificate is held to be conditional, Wells Fargo is not entitled to rely upon the failure of that condition because it never read the certificate. While we agree that Wells Fargo is in breach of the Indemnity Agreement irrespective of whether the Hoist Buyer's Certificate became invalid, we conclude, as did the trial court, that the failure of the condition precedent precludes a finding that the Buyer Parties have been damaged by that breach. In assessing whether the Buyer Parties can or cannot prove damages, Wells Fargo's actual reliance on the condition precedent in the Hoist Buyer's Certificate is not relevant.

¶ 35 Instead, we must consider whether the Buyer Parties' position has changed because Wells Fargo prematurely released the Escrow Fund. "Damages awarded for breach of contract should place the nonbreaching party in as good a position as if the contract had been performed." *See Anesthesiologists Assocs. v. St. Benedict's Hosp.*, 884 P.2d 1236, 1238 (Utah 1994) (internal quotation marks omitted). Thus, we must compare what actually happened with what would have happened if Wells Fargo had read the Hoist Buyer's Certificate and denied Ground Zero's request to release the Escrow Fund on the first anniversary of the transaction.

¶ 36 As has been discussed, *see supra* Part II, even assuming that the Escrow Fund had been held pursuant to the Hoist Buyer's Certificate, it would have been released when the Hoist judgment became unappealable, two months before Buyer Parties filed the Znetix Buyer's Certificate. By then, the Escrow Fund would have been released to Ground Zero, even if Wells Fargo had held them until the Hoist Buyer's Certificate was resolved. Consequently, summary judgment was proper despite Wells Fargo's failure to read the Hoist Buyer's Certificate.

### V. Even if Deemed Admitted, the Hoist Buyer's Certificate Does Not Require a Payment from the Escrow Fund.

¶ 37 Finally, the Buyer Parties argue that their claim against the Escrow Fund should have been paid because Ground Zero did not object to that certificate as required by paragraph 5(b)(iii) of the Indemnity Agreement, which provides as follows:

> If [Ground Zero] shall object to any amount claimed in connection with any Indemnification Item specified in any Buyer's Certificate, [Ground Zero] shall, within 10 business days after delivery *by [Wells Fargo] to [Ground Zero]* of such Buyer's Certificate, deliver to [Wells Fargo] and [the Buyer Parties] a certificate of [Ground Zero], ... (a "Seller's Certificate"), (i) specifying in reasonable detail each such amount to which [Ground Zero] objects and (ii) specifying in reasonable detail the nature and basis for each such objection; ... *If [Wells Fargo] shall not have received a Seller's Certificate objecting to the amount claimed with respect to an Indemnification Item within 10 business days after delivery to [Ground Zero] of a Buyer's Certificate specifying such Indemnification Item, [Ground Zero] shall be deemed to have acknowledged the correctness of the amount claimed* on such Buyer's Certificate with respect to such Indemnification Item, *and [Wells Fargo] shall promptly thereafter transfer to [the Buyer Parties] ... an amount in cash equal to the amount claimed* in the Buyer's Certificate with respect to such Indemnification Item.

(Emphases added.) Based upon this language, the Buyer Parties argue that the Hoist Buyer's Certificate was deemed admitted and that Wells Fargo should have transferred the Escrow Fund to them. In contrast, Ground Zero contends that "[a]lthough paragraph 5(b)(ii) required the [Buyer] Parties to deliver a copy of their Buyer's Certificate to *both* Wells Fargo and [Ground Zero],[

8] [paragraph 5(b)(iii)] expressly provided that [Ground Zero's] obligation to object to the Buyer's Certificate arises *only* from 'delivery by [Wells Fargo] to [Ground Zero] of such Buyer's Certificate.'" (Sixth alteration in original.)

¶ 38 While we agree with Ground Zero that the first part of subsection (iii) expressly states that the ten days run from "delivery [of the Buyer's Certificate] by [Wells Fargo] to [Ground Zero]," we also acknowledge that later in that same paragraph the Indemnity Agreement provides that Ground Zero must file a seller's certificate objecting to the buyer's certificate "within 10 business days after delivery to [Ground Zero] of a Buyer's Certificate," omitting the "by [Wells Fargo]" language used earlier. However, we need not resolve this question because, even assuming that the time ran from Ground Zero's receipt of the Buyer's Certificate from the Buyer Parties, the condition precedent to the claim failed.

¶ 39 We have already held that the Hoist Buyer's Certificate was conditional upon a determination that the cable-cross device infringed on the Hoist patent, *see supra* Part II. Thus, if Ground Zero is deemed to have acknowledged the correctness of the Buyer Parties' claim, that acknowledgment would make Ground Zero liable for "Losses ..., includ[ing] attorney[] fees and costs incurred," but only "[i]n the event that the Hoist claim of infringement is successfully prosecuted." That condition was never satisfied, and we therefore agree with the trial court that the claim actually made in the Hoist Buyer's Certificate does not entitle the Buyer Parties to recover.

## CONCLUSION

¶ 40 The Purchase Agreement does not provide indemnification to the Buyer Parties for the defense of unsuccessful claims of patent infringement. The Buyer Parties have not suffered any damage as a result of Wells Fargo's premature release of the Escrow Fund because the express condition of the Hoist Buyer's Certificate failed. Neither Wells Fargo's lack of reliance on the Hoist Buyer's Certificate nor Ground Zero's failure to object to it eliminates the need for the Buyer Parties to make a showing of damages as an essential element of their claims.

¶ 41 Affirmed.

¶ 42 I CONCUR: GREGORY K. ORME, Judge.

THORNE, Judge (concurring):

¶ 43 I concur in the result, as well as the analysis, of the majority opinion. However, I write separately to express my concern about the trial court's sparse explanation of its analysis of the issues examined in Parts II through V of the majority opinion. Although it appears from the trial court's oral ruling that it based a portion of its summary judgment decisions on its conclusion that the Buyer Parties have not suffered any damages, the trial court did not provide an explanation for the manner in which it arrived at that and other conclusions. Thus, in order to review the issues on appeal, this court is forced to infer the trial court's reasoning from portions of the hearing transcript which contain questions and comments by the trial court that could have logical relevance to the trial court's conclusions. This is particularly disconcerting considering the numerous summary judgment grounds asserted by the parties in their twenty-seven summary judgment documents, with exhibits spanning approximately 990 pages in support and in opposition to the various summary judgment motions. Ordinarily, the lack of explanation supporting the grant of summary judgment in this context would support remand for findings and for explanation. However, I believe the majority opinion's carefully detailed and extraordinary analysis is correct. Therefore, I concur with the majority opinion.

---

8. Paragraph 5(b)(ii) of the Indemnity Agreement provides that "[i]f at any time on or prior to the termination of this Agreement, [the Buyer Parties] deliver[] to [Wells Fargo] and [Ground Zero] ... a 'Buyer's Certificate' ..., [Wells Fargo] shall, promptly upon receipt of such Buyer's Certificate, deliver a copy of such Buyer's Certificate to [Ground Zero]."