*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 45**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WDIS, LLC,
and DREAMWORKS PROPERTY MANAGEMENT, INC.,
*Appellants,*

*v.*

HI-COUNTRY ESTATES HOMEOWNERS ASSOCIATION,
*Appellee.*

No. 20170342
Filed August 13, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Laura Scott
No. 160904994

Attorneys:

Troy L. Booher, Freyja R. Johnson, Beth E. Kennedy, Bruce R. Baird,
Salt Lake City, for appellants

Jeffrey L. Silvestrini, Stephen T. Hester, Bradley M. Strassberg,
Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1    This case involves a dispute between Hi-Country Estates Homeowners Association (HOA) and a group of landowners (WDIS) within the HOA's boundaries. At the district court level WDIS brought, among other actions, an action to quiet title in its properties against the HOA. Specifically, WDIS sought a judicial declaration that its properties were not encumbered by the HOA's covenants and restrictions. The district court dismissed the action because it

determined that it was barred by a statute of limitations. The court also held that the doctrine of res judicata precluded WDIS from challenging certain encumbrances enacted in 1990.

¶2 WDIS appeals both determinations. As to the first determination, WDIS sets forth three arguments for why its quiet title claim is not time barred: (1) it qualifies for an "actual possession" exception to statutes of limitations established in *Bangerter v. Petty*,[1] (2) it qualifies for a "true quiet title" exception established in *In re Hoopiiaina Trust*,[2] and (3) statutes of limitations do not apply to challenges of void encumbrances.

¶3 Although we disagree with WDIS's framing of the quiet title exception, we agree that no statute of limitations applies to WDIS's quiet title claim, because WDIS is able to establish a prima facie case of quiet title without first receiving some other relief from the court. Our decisions in *Hoopiiaina* and *Bangerter* rely on the same quiet title exception to statutes of limitations. Because this conclusion renders a determination on WDIS's void encumbrance argument unnecessary, we decline to address it.

¶4 As to the res judicata determination, WDIS argues that reversal is warranted because the district court improperly considered evidence outside the pleadings without converting the motion to dismiss into a motion for summary judgment. Because the HOA failed to address WDIS's plausible argument on this issue, we reverse without reaching the merits of WDIS's argument.

## Background

¶5 In August of 1970, three men—Charles Lewton, Gerald Bagley, and Harold Glazier—filed "Articles of Incorporation of Hi-Country Estates, Inc." with the Utah Secretary of State.[3] That same day, they also filed a "Certificate of Limited Partnership of Hi-Country Estates, Second," with Hi-Country Estates, Inc. as the limited partnership's general partner. The purpose of both of these entities was to "acquire, develop and sell real and personal

---

[1] 2009 UT 67, 225 P.3d 874.

[2] 2006 UT 53, 144 P.3d 1129.

[3] Because our review of a decision of a motion to dismiss requires us to accept "the facts alleged in the complaint," we rely on the facts WDIS asserted in their complaint. *See Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226.

properties." At the time of these filings, none of the shareholders owned any real property within the purported boundaries of the HOA.

¶6 Three years later, Mr. Lewton, in his individual capacity, filed articles of incorporation for the HOA. Mr. Lewton was identified in the articles of incorporation as the HOA's incorporator. Although Mr. Lewton—together with three other individuals—owned only one, eight-acre parcel of property within the purported boundaries of the HOA, a property description attached to the articles of incorporation included approximately 2,035 acres. Additionally, at the time the articles of incorporation were filed, none of the Hi-Country Estates entities owned any of the real property included in the attached property description. And none of the actual owners of the property had agreed to be bound by the articles of incorporation, had knowledge of its filing, or had conferred a power of attorney or other authorization upon Mr. Lewton to act on their behalf. So at the time the articles of incorporation were filed, Mr. Lewton did not have authorization from the owners of the remaining 2,027 acres to include their land in the HOA.[4]

¶7 Around that same time, Mr. Lewton also recorded protective covenants for "Hi-Country Estates, Phase II" with the Salt Lake County Recorder's Office. Mr. Lewton was the only one who signed the covenants. A property description attached to the recorded covenants included only 1,955 acres of real property—or eighty fewer acres than the area described in the attachment of the HOA's articles of incorporation. At the time the covenants were recorded, Mr. Lewton owned only eight acres of real property inside the encumbered area.

¶8 In the years following the initial incorporation of the HOA and recording of restrictive covenants, other addenda to the articles of incorporation, bylaws, and covenants were recorded. Following the filing of a new addendum in 2015, WDIS demanded production of documents from the HOA. After reviewing these documents, WDIS discovered many alleged deficiencies in the HOA's articles of incorporation and subsequent addenda, covenants, and bylaws. WDIS claims, for various reasons, that each of these addenda, bylaws, and covenants are invalid, improper, or unenforceable.

---

[4] There were also a number of defects in the articles of incorporation that could potentially render the articles invalid.

¶9   In August of 2016, WDIS filed the complaint in this case, alleging seven separate causes of action. The first three causes of action were for a declaratory judgment that the HOA's covenants, articles, and bylaws were void or invalid. The fourth cause of action was for a judicial dissolution of the HOA. The fifth cause of action was to quiet title to WDIS's property in WDIS's favor. And the sixth and seventh causes of action were for forms of injunctive relief.

¶10 Shortly after the complaint was filed, the HOA filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure. It argued that the complaint should be dismissed because all of WDIS's claims—except for certain claims arising after 2012— were barred by statutes of limitations. The HOA also argued that the complaint should be dismissed because WDIS's claims were precluded under the doctrine of res judicata.

¶11 WDIS replied to the HOA's motion to dismiss by arguing that there is no statute of limitations for an action (1) challenging a document that was "void ab initio" or (2) seeking to remove a cloud from, or to quiet, the title to real property. At oral argument on the motion, WDIS clarified that the statute of limitations should not apply to its claim, because it was a true quiet title action. Additionally, WDIS argued that the HOA's res judicata argument failed because the parties were not the same and the subject matter of previous litigation was substantially different.

¶12 In its March 10, 2017 Order, the district court granted the HOA's motion to dismiss as to all of WDIS's claims that arose before 2012 because it determined that they were barred by a statute of limitations. The court ruled that WDIS's quiet title claim was not a true quiet title action, because it was dependent on a preliminary determination that the HOA's governing documents were invalid or void *ab initio.*

¶13 Additionally, the district court accepted the HOA's res judicata argument, but only as to WDIS's first cause of action as it relates to the 1990 recording of additional restrictive covenants. So absent the district court's statute of limitations ruling, WDIS is not precluded from bringing any claims related to the original articles of incorporation, or any subsequent addendums, covenants (except for the 1990 recording of additional restrictive covenants), or bylaws.

¶14 WDIS agreed to dismiss its remaining claims without prejudice so that it could challenge the dismissal of its complaint through this appeal. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶15 First, we must decide whether the district courted erred in ruling that a statute of limitations applied to WDIS's quiet title claim. A district court's application of a statute of limitations is a question of law we review for correctness.[5]

¶16 Additionally, we must decide whether the district court erred in considering material outside of the pleadings to decide a rule 12(b)(6) motion to dismiss. "[T]he propriety of a 12(b)(6) dismissal is a question of law," which we review "under a correctness standard."[6] "In reviewing the trial court's decision, we accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the plaintiff as the non-moving party."[7]

**Analysis**

¶17 WDIS argues that, because quiet title claims are never time barred, the district court erred by ruling that a statute of limitations applied to WDIS's quiet title claim. Alternatively, it argues that the court erred because challenges of void encumbrances are likewise never barred.[8] We hold that WDIS's quiet title action is not barred by

---

[5] *Arnold v. Grigsby*, 2009 UT 88, ¶ 7, 225 P.3d 192.

[6] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).

[7] *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226.

[8] The HOA argues that WDIS failed to preserve one of its arguments in support of its quiet title claim. According to the HOA, WDIS challenged only the documents creating the encumbrances, not the encumbrances themselves, in the district court. So, on appeal, the HOA argues that WDIS may challenge only the documents. But the record clearly belies this assertion. WDIS brought a number of different claims in its complaint. Although most of the claims were based on essentially the same facts—namely the invalidity of the articles of incorporation—each claim served a different purpose. For example, WDIS brought a declaratory judgment claim, in which it requested that the HOA's governing documents be declared void and the HOA dissolved. The effect of this relief would be that the HOA would cease to exist and every member within the HOA boundaries would no longer be subject to the HOA's restrictions. This claim could be characterized as a challenge to the HOA

(Continued)

a statute of limitations, because WDIS is able to establish a prima facie case of quiet title without receiving any other relief from the district court. Because this determination renders a determination on WDIS's void encumbrance argument unnecessary, we decline to address that argument.

¶18  WDIS also argues that the district court erred by considering material outside of the pleadings in deciding, on a rule 12(b)(6) motion to dismiss, that some of WDIS's claims were barred by the doctrine of res judicata. Because the HOA failed to adequately brief the issue, we reverse the district court's res judicata determination.

¶19 But before turning to the merits of this case, we must address whether we have appellate jurisdiction.

## I. We Have Appellate Jurisdiction in This Case

¶20 After briefing and oral argument were complete, we identified a potential policy concern that could be created by exercising appellate jurisdiction in this case. As we noted above, after the district court issued its order dismissing, with prejudice, all of WDIS's claims to the extent they were based on facts arising before 2012, the parties stipulated to a dismissal without prejudice of what remained of WDIS's claims.[9] Although we are ordinarily free to

---

documents. But WDIS also brought a quiet title claim, seeking a declaration that its own property is not subject to any encumbrances from the HOA. This claim was a challenge of the encumbrances on WDIS's property. Because it is uncontested that WDIS brought its quiet title claim below, the HOA's preservation argument fails.

Additionally, the HOA claims that WDIS failed to preserve two other, alternative arguments. But because we decide this case without reaching those arguments, we decline to address whether they were preserved.

[9] *Supra* ¶ 14. WDIS brought six claims against the HOA. Each claim dealt with substantially the same facts arising between 1979 and 2015. The district court held that all of WDIS's claims were time barred to the extent they were based on events occurring before 2012. After issuing this ruling at the hearing on the motion to dismiss, the court requested WDIS to file an amended complaint, narrowing the scope of all of its claims to events arising after 2012. During this discussion, the court acknowledged that at least one of WDIS's claims might not be sustainable without the pre-2012 facts. In response to the court's request, WDIS inquired into the possibility of dismissing what remained of its claims without prejudice so that it

(Continued)

exercise appellate jurisdiction over an order where there are no other claims pending in the district court, we recognized that the practice of exercising jurisdiction over a case in which some claims had been voluntarily dismissed without prejudice created the possibility that a party could use a voluntary dismissal without prejudice of some claims as a loophole through the requirements of rule 54(b) of the Utah Rules of Civil Procedure.

¶21 Under what we refer to as the final judgment rule, an "appeal is improper if it is taken from an order or judgment that is not final."[10] There are, however, a few exceptions to the final judgment rule, including a rule 54(b) certification. A rule 54(b) certification allows a district court to certify an otherwise non-final order as final "if the court expressly determines that there is no just reason for delay."[11] Because a voluntary dismissal without prejudice of some claims does not necessarily foreclose the possibility of resuscitating the dismissed claims after an appeal, a party could use

---

could pursue an appeal of the court's order dismissing what it considered to be the "guts of the case." In fact, from the transcript it appears that WDIS's counsel was unsure of whether the court's order left WDIS with any claims at all. After stating that the court had dismissed "the guts of the case," counsel stated that "[t]he other stuff is—I don't know yet. I have to sift my way through that impact. I do agree that if we choose to go forward, it makes sense to file a cleaned up amended complaint on dissolution." As part of this discussion, WDIS stated that it wanted to find a way to dismiss what remained of its claims "in such a way that we could resuscitate them if [the appellate court] reverses on the statute of limitations." The court agreed that WDIS could do that if it chose, so it granted WDIS thirty days to either file an amended complaint or stipulate to a dismissal without prejudice of what remained of its claims. WDIS and the HOA stipulated to a dismissal. The court then entered an order dismissing the remainder of WDIS's claims without prejudice, stating that the order was a final order under rule 54(a). No claims remain pending in the case.

[10] *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649; *see also Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 10, 342 P.3d 224 ("A 'final judgment for purposes of appeal is one that resolves all claims, counterclaims, cross-claims, and third-party claims before the court and fully and finally resolves the case.'").

[11] UTAH R. CIV. P. 54(b).

a voluntary dismissal without prejudice of its remaining claims as a mechanism for appealing a district court's otherwise non-final order without obtaining a rule 54(b) certification.[12] In light of this policy concern, we ordered supplemental briefing on whether we have appellate jurisdiction under the final judgment rule. We conclude that we do.

¶22 A "final judgment for purposes of appeal is one that resolves all claims, counterclaims, cross-claims, and third-party claims before the court and fully and finally resolves the case."[13] To determine whether a case has been fully and finally resolved below, we apply a "pragmatic test" that "should not be applied as a sterile formality."[14] Under this test, we need not determine whether the factual controversy underlying the legal action "is concluded, but whether the particular [legal] proceeding or action is terminated by the judgment."[15] In other words, if there are no claims pending in a case, the case is final even though there is a possibility, because the parties have not fully resolved the factual controversy underlying the action, that the parties may soon commence a new legal proceeding. So if the action is terminated, "and, in order to proceed farther with regard to the same subject-matter, a new action or proceeding must be commenced, then, as a general rule, the judgment which ends the particular action or proceeding is final for

---

[12] We note that although a voluntary dismissal without prejudice could be used as a mechanism for appealing an otherwise non-final order, this strategy is not without its risks. For example, under the doctrine of claim preclusion, an appellant who loses on appeal could be precluded from reasserting its voluntarily dismissed claims in another case. *See Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988) (explaining that the doctrine of claim preclusion bars a cause of action if it "could and should have been raised" in an earlier action that resulted in a final judgment on the merits); *see also Gann v. William Timblin Transit, Inc.*, 522 F. Supp. 2d 1021, 1028 (N.D. Ill. 2007) (explaining that the doctrine of claim preclusion applies where a party voluntarily dismisses a claim without prejudice in order to split claims and pursue an appeal of some of those claims).

[13] *Am. W. Bank*, 2014 UT 49, ¶ 10.

[14] *Id.* ¶ 11 & n.19, (quoting 15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3913 (2d ed. 2013)).

[15] *Bowles v. State ex rel. Utah Dep't of Transp.*, 652 P.2d 1345, 1346 (Utah 1982) (internal quotation marks omitted).

the purposes of an appeal."[16] Under this rule, an order of dismissal, either with or without prejudice, fully and finally resolves the case.

¶23 "Utah has adopted the majority rule that an order of dismissal is a final adjudication, and thereafter, a plaintiff may not file an amended complaint . . . ."[17] This is true "even though the dismissal was without prejudice."[18] So when all the claims in a case have been dismissed the case is ended "as far as the district court [is] concerned," and, absent a reversal and remand by the appellate court, the plaintiff can only reassert claims that were dismissed without prejudice by commencing a new action.[19] This is an important aspect of our pragmatic approach to the final judgment rule. In other words, under our pragmatic approach to the final judgment rule, we treat dismissals, either with or without prejudice, as final orders that have the effect of fully terminating the action and rendering an appealed order a final order.[20] Thus, under this approach, an appealed order is a final order so long as there are no claims pending below.[21]

---

[16] *Id.*

[17] *Am. W. Bank*, 2014 UT 49, ¶ 11 (citation omitted) (internal quotation marks omitted).

[18] *Steiner v. State*, 495 P.2d 809, 810 (Utah 1972).

[19] *Am. W. Bank*, 2014 UT 49, ¶ 12; *see also Steiner*, 495 P.2d at 810 ("[E]ven though the dismissal was without prejudice that order was a final adjudication and did not authorize the plaintiffs to file an amended complaint in these proceedings."). Because the dismissal of all pending claims ends the case in the district court, where an appeal does not result in the case being reopened below (through the reinstatement of some of the dismissed claims), no case remains in which a party could reassert claims that had been dismissed without prejudice after appeal. For this reason, a party can only reassert claims that had been dismissed without prejudice by commencing a new case—not by amending his or her pleading in the first case after the appeal.

[20] *Am. W. Bank*, 2014 UT 49, ¶ 11 (explaining that, in considering whether a dismissal has fully terminated the action, we "do not focus on whether a dismissal was with or without prejudice").

[21] *See Bradbury*, 2000 UT 50, ¶ 10 (explaining that, for an order or judgment to be final, it must "dispose of all parties and claims to an action"); *see also A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323,

(Continued)

¶24 For example, in *America West Bank*, we held that an order dismissing certain claims "without prejudice to filing another suit does not make the [case] unappealable."[22] In that case, the district court dismissed a number of claims with prejudice and a number of claims without prejudice.[23] On appeal, the defendant argued that we did not have appellate jurisdiction because the dismissal without prejudice rendered the order of dismissal a non-final order.[24] But we disagreed. We stated that under the rule adopted in Utah, "an order of dismissal is a final adjudication . . . even if such a dismissal is without prejudice."[25] And we explained that under our "pragmatic" "test for finality,"[26] the question was whether "the *effect* of the ruling" was to finally resolve the issues.[27] Citing the rule that "an order of dismissal is a final adjudication . . . even if such a dismissal is without prejudice,"[28] and noting that "there [were] no counterclaims, cross-claims, or third-party claims"[29] remaining below, the court held that the dismissal without prejudice had "ended [the] suit as far as the district court was concerned."[30] For this reason we held that the dismissal without prejudice had the effect of "fully terminat[ing] the case."[31] Thus our decision in *America West Bank* confirms that, under our pragmatic approach to the final

---

325–26 (Utah 1991) (dismissing an appeal because a counterclaim remained pending before the trial court); *Kennedy v. New Era Indus., Inc.*, 600 P.2d 534, 535–37 (Utah 1979) (dismissing an appeal because a cross-claim remained pending before the trial court).

[22] 2014 UT 49, ¶ 11 (*quoting United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949).

[23] *Id.* ¶ 8.

[24] *Id.* ¶ 10.

[25] *Id.* ¶ 11 (internal quotation marks omitted).

[26] *Id.* ¶ 12.

[27] *Id.* ¶ 11.

[28] *Id.*

[29] *Id.* ¶ 12.

[30] *Id.* ¶ 11 (alteration in original) (*quoting Wallace & Tiernan Co.*, 336 U.S. at 794 n.1).

[31] *Id.* ¶ 12.

judgment rule, an appealed order is a final order so long as there are no claims pending below.

¶25 We note that the HOA disagrees with this interpretation of the final judgment rule. According to the HOA, our final judgment rule cases should be read as foreclosing appellate jurisdiction here because a contrary reading would allow parties to circumvent the requirements of rule 54(b). But, as WDIS points out in its brief, this proposed reading of our case law would be inconsistent with the holdings in four of our previous cases.[32] In each of the four cases WDIS cites, we held that we had appellate jurisdiction over the case after carefully acknowledging that the case had been perfected for appeal by way of a voluntary dismissal without prejudice.

---

[32] *See Eagar v. Burrows*, 2008 UT 42, ¶ 12, 191 P.3d 9 (acknowledging that we had jurisdiction even though the parties "voluntarily dismissed their counterclaims without prejudice to expedite the conclusion of the litigation"); *Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 5, 175 P.3d 560 (exercising appellate jurisdiction over a summary judgment on the plaintiff's negligence claim even though the plaintiff "later voluntarily moved to dismiss his [other] gross negligence claim without prejudice"); *Anderson v. Provo City Corp.*, 2005 UT 5, ¶ 8, 108 P.3d 701 ("Pursuant to the stipulation of the parties, the court then dismissed the Owners' as-applied challenges without prejudice, thus rendering its summary judgment a final order in the case . . . ."); *Bd. of Educ. of Jordan Sch. Dist. v. Sandy City Corp.*, 2004 UT 37, ¶ 5, 94 P.3d 234 ("[The court] accordingly granted Sandy City's motion and denied Jordan's motion. Thereafter, the parties jointly moved to dismiss their remaining claims without prejudice. The district court granted that motion, and this appeal followed."). The court of appeals has also issued at least two cases consistent with our previous four cases. *See Free Motion Fitness, Inc. v. Wells Fargo Bank W., NA*, 2009 UT App 120, ¶ 13 n.4, 208 P.3d 1066 ("Wells Fargo's remaining claim for contractual indemnification against Ground Zero and Ground Zero's counterclaim against Wells Fargo were later dismissed without prejudice by stipulation of the parties."); *State v. Amoroso*, 1999 UT App 60, ¶ 5, 975 P.2d 505 ("Although the trial court did not dismiss count IV, the State voluntarily dismissed this count without prejudice. This appeal followed.").

¶26 For example, in *Anderson v. Provo City Corp.*,[33] we explicitly held that a voluntary dismissal without prejudice of all remaining claims in a case transforms a previously non-final order into a final order. In that case, a group of homeowners filed a lawsuit against Provo City.[34] In their complaint they brought a facial constitutional challenge seeking to overturn a zoning ordinance and a number of as-applied constitutional challenges seeking to obtain compensation for harms inflicted by the ordinance.[35] On summary judgment the district court dismissed their facial claim.[36] After this dismissal, and "[p]ursuant to the stipulation of the parties," the district court dismissed the homeowners' remaining, as-applied claims without prejudice and "stayed the effective date of [the ordinance at issue] pending a decision on appeal."[37] Although it was clear that the homeowners intended to later refile their as-applied challenges if they lost their appeal,[38] on appeal, we stated that the voluntary dismissal without prejudice of the homeowners' remaining claims rendered the court's "summary judgment a final order in the case."[39] We then explicitly held that we had jurisdiction to hear the appeal.[40]

¶27 Thus *Anderson* established that a voluntary dismissal of all of the remaining claims in a case renders a previously non-final order a final, appealable order. In fact, because the district court granted a stay pending appeal in connection with the dismissal,

---

[33] 2005 UT 5, ¶ 8.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] Because the homeowners' voluntarily-dismissed claim raised an alternative legal theory that would entitle them to relief only if we affirmed the district court's denial of their primary legal theory, it is apparent that the homeowners' stipulated dismissal of the alternative claim without prejudice was done with the intent of expediting appellate review of the district court's order while preserving their ability to refile their alternative legal theory. So the nature of the homeowners' voluntarily dismissed claim made it clear that the homeowners intended to refile it if they lost their appeal.

[39] *Anderson*, 2005 UT 5, ¶ 8.

[40] *Id.* ¶ 9.

*Anderson* established that a voluntary dismissal without prejudice renders previous orders final even where the remaining claims were voluntarily dismissed for the express purpose of expediting an appeal.

¶28 The holding in *Anderson* is consistent with our jurisdictional holdings in the other three cases WDIS cites.[41] In each of those cases we asserted appellate jurisdiction after noting that some claims had been voluntarily dismissed without prejudice. By asserting jurisdiction while being fully aware of the procedural posture in those cases—and of our duty to not decide cases in which we do not have jurisdiction—we clearly held that the procedural posture in those cases was not jurisdictionally defective.

¶29 So even were we to agree with the HOA's proposed reading of our other final judgment rule cases, we could not adopt that proposed approach without overturning the four cases WDIS cites. But, under the doctrine of *stare decisis*, we cannot overturn those cases unless the *stare decisis* factors we identified in *Eldridge v. Johndrow*[42] weigh in favor of doing so. Because those factors do not weigh in favor of overturning the four cases WDIS cites, we are bound by them.

¶30 Accordingly, we hold that, under our pragmatic test, an appealed order is a final order so long as there are no claims pending below. And we clarify that this is so even where some claims in the case had previously been dismissed without prejudice. After applying this pragmatic test to the facts of this case, we conclude that the order appealed is a final, appealable order.

¶31 Here, the district court dismissed all of WDIS's claims with prejudice to the extent they were based on facts arising before 2012. Because the "heart of [WDIS's] Complaint" was to quiet title to land improperly encumbered with an HOA in the 1970s, WDIS argues that the court's dismissal of WDIS's pre-2012 claims "effectively adjudicated WDIS's main argument as to the post-2012 [claims]" as

---

[41] *See, e.g.*, *Eagar*, 2008 UT 42, ¶ 12 (explaining that we had jurisdiction after parties had "voluntarily dismissed their counterclaims without prejudice to expedite the conclusion of the litigation").

[42] 2015 UT 21, ¶ 22, 345 P.3d 553 (explaining that our previous decisions "have identified two broad factors that distinguish between weighty precedents and less weighty ones").

well. In other words, even though WDIS's claims identified some "additional problems" in a few "post-2012 documents," all of WDIS's claims were based primarily on "the underlying documents signed and recorded without authorization in the 1970s." The district court's treatment of what remained of WDIS's claims is consistent with this characterization.

¶32 Recognizing that WDIS's original complaint was unusable, the court ordered WDIS either to draft a new complaint, "to the extent that there [were] other grounds" for its claims, or to voluntarily dismiss its remaining claims without prejudice so that it could pursue an appeal. WDIS chose the second option, and the court dismissed what remained of WDIS's claims. After this dismissal, no claims remained pending in the district court. Under our pragmatic approach to the final judgment rule, the district court's dismissal of WDIS's pre-2012 claims was rendered a final, appealable order. Accordingly, we hold that we have appellate jurisdiction in this case.

¶33 Nevertheless, because our current approach to the final judgment rule creates tension with a policy underlying rule 54(b),[43] we refer the issue to our rules committee for a recommendation regarding whether an amendment to rule 54 is needed. To be clear, by referring this issue to the committee, we are not suggesting that our current approach is wrong, nor are we suggesting that we should adopt an approach used in other jurisdictions. Rather, by referring this issue to the rules committee we are merely expressing a willingness to explore whether a preferable approach exists. Federal case law, for example, offers a variety of possible approaches to the final judgment rule. Some federal courts have adopted an approach consistent with our own.[44] Other federal courts allow the

---

[43] *See supra* ¶¶ 20–21.

[44] *See, e.g., PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1361 (Fed. Cir. 2018) ("[T]his court has held that even a voluntary dismissal without prejudice of some claims, when all the other claims in the case have been adjudicated on their merits, results in a final judgment."); *Chrysler Motors Corp. v. Thomas Auto Co.*, 939 F.2d 538, 540 (8th Cir. 1991) (explaining that the "effect" of a voluntary dismissal without prejudice "was to make the judgment granting partial summary judgment a final judgment for purposes of appeal, even though the district court had not so certified under Fed. R. Civ. P. 54(b)"); *Hicks v. NLO, Inc.*, 825 F.2d 118, 120 (6th Cir. 1987)

(Continued)

appeal to move forward upon a stipulation of the parties to treat the claims at issue as having been dismissed with prejudice unless the appellant prevails on appeal.[45] And still other courts allow the appeal to proceed after deeming the voluntarily dismissed claims to have been dismissed with prejudice[46] or after remanding to the district court for a dismissal with prejudice.[47] Because the federal approach to voluntary dismissals without prejudice is far from uniform, if the rules committee decides to recommend an amendment to rule 54 based on a federal approach (or on an approach from another state), there are a variety of ways in which it could do so. Accordingly, the committee should use all of the tools

---

("Where a court has entered judgment against a plaintiff in a case involving more than one claim and the plaintiff voluntarily dismisses the claim or claims, which made the judgment non-appealable and the dismissal is brought to the attention of the district court, this Court will not penalize the plaintiff by dismissing his or her appeal."); *see also State Treasurer of Mich. v. Barry*, 168 F.3d 8, 18 (11th Cir. 1999) (Cox, J., concurring) (explaining that the approach adopted by "the Sixth, Eighth, and First Circuits stand[s] on firmer ground" than the approach followed by the Eleventh Circuit).

[45] *See, e.g.*, *Minn. Life Ins. Co. v. Kagan*, 724 F.3d 843, 847 (7th Cir. 2013) ("[A]s long as the party 'explicitly agrees . . . to treat the dismissal of the claim as having been with prejudice'—in other words, the party agrees not to refile the claim in the district court in the event of an unsuccessful appeal—we have found jurisdiction secure for the appeal to proceed." (second alteration in original)).

[46] *See, e.g.*, *Madsen v. Audrain Health Care, Inc.*, 297 F.3d 694, 698 (8th Cir. 2002) ("Under this rubric, we choose the latter remedy, discussed at oral argument, and deem [the party's] request for dismissal of Count IV to be with prejudice." (footnote omitted)).

[47] *See, e.g.*, *Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, No. 15-56186, 2017 WL 7116976, at *1 (9th Cir. Aug. 17, 2017) (dismissing appeal for lack of jurisdiction where the appellants rejected the invitation to dismiss the remaining claims with prejudice on limited remand); *London v. Beaty*, 612 F. App'x 910, 914 (10th Cir. 2015) (explaining that while on appeal, "a stipulated notice of dismissal was filed with the district court, dismissing the claims against Officer Hill with prejudice" so it had jurisdiction to consider the appeal).

and information at its disposal to thoroughly study this issue before making any recommendations.

## II. WDIS's Quiet Title Action is Not Barred by a Statute of Limitations

¶34  We now turn to the merits of this appeal. WDIS argues that its quiet title action is not barred by a statute of limitations, because it is a "true quiet title action." Under Utah law, a true quiet title action is never barred by the statute of limitations.[48] According to WDIS, there are two scenarios in which a quiet title action may be considered a "true quiet title action." First, WDIS argues that under our decision in *Bangerter v. Petty*,[49] it is a true quiet title action if it is brought by an individual or entity in actual possession of the property under a claim of ownership. Second, it argues that under our decision in *In re Hoopiiaina Trust*,[50] it is a true quiet title action if the party merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title. WDIS argues that its quiet title action qualifies as a true quiet title action under either scenario. Although we disagree that *Bangerter* and *Hoopiiaina* establish separate true quiet title exceptions, we agree that WDIS's quiet title claim qualifies as a true quiet title action.

¶35  In Utah it is well-established that quiet title actions are not barred by a statute of limitations. One rationale for this rule is that in "many instances one in possession would not know of dormant adverse claims of persons not in possession."[51] And "even if . . . the party in possession knows of . . . a potential [adverse] claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him."[52] Another rationale, articulated in other jurisdictions, is that because "the injury from a cloud on the title to real estate is continuing," the "cause of

---

[48] *In re Hoopiiaina Tr.*, 2006 UT 53, ¶ 23, 144 P.3d 1129.

[49] 2009 UT 67, ¶ 16, 225 P.3d 874.

[50] 2006 UT 53.

[51] *Bangerter*, 2009 UT 67, ¶ 16 (internal quotation marks omitted).

[52] *Id.* (first alteration in original) (internal quotation marks omitted).

action for [a] removal [of a cloud on title] is likewise continuing, and never barred while the cloud exists."[53]

¶36 Although courts in Utah have been applying the statute of limitations exception to quiet title actions for over a century, it was not until our decision in *Hoopiiaina* that we provided much needed clarification for how and when the exception should be applied.

¶37 In *Hoopiiaina* we recognized that although generally "all actions, whether legal or equitable, are subject to a statute of limitations in Utah[,] . . . suits brought to quiet the title to real property have always been an exception to this rule."[54] But we noted that courts "must proceed cautiously when applying this rule" because parties could attempt "to avoid the statute of limitations on other claims by simply disguising them as claims for quiet title relief."[55] For this reason, we clarified what constitutes a "true quiet title action" as opposed to an action that was disguised as a quiet title action but was actually seeking other relief.[56] We stated that a "true quiet title action is a suit brought 'to quiet an *existing* title against an adverse or hostile claim of another,' and 'the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants.'"[57] "Thus, the question becomes whether a claim is a true quiet title action or whether the claimant really seeks other relief . . . ."[58]

¶38 Determining whether a party truly seeks other relief when it brings a quiet title claim can be difficult. In *Hoopiiaina* we attempted to provide guidance for how courts should make this determination. We said that "[w]hen a party asserts a quiet title claim in which that party merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title," the party is bringing a true quiet title claim.[59] So "if it is not necessary that the court grant other relief in favor of the

---

[53] *Tex. Co. v. Davis*, 254 S.W. 304, 309 (Tex. 1923).

[54] 2006 UT 53, ¶ 26 (citation omitted).

[55] *Id.*

[56] *Id.*

[57] *Id.* (quoting *State ex rel. Dep't of Social Servs. v. Santiago*, 590 P.2d 335, 337–38 (Utah 1979)).

[58] *Id.*

[59] *Id.* ¶ 27.

party, such as cancelling a deed on the basis of fraud, in order to rule on the quiet title claim, then the statute of limitations cannot operate as a bar to the party's . . . claim."[60] In other words, "[i]f the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute of limitations applicable to the other claim will also apply to the quiet title claim."[61]

¶39 Three years after *Hoopiiaina*, in *Bangerter v. Petty*,[62] we once again addressed the question of whether a statute of limitations would bar a quiet title action. In that case Ms. Bangerter, the plaintiff, challenged a sheriff's deed on her home on the ground that the deed was void. The defendant argued "that Bangerter's claim [was] not a true quiet title action [under the test in *Hoopiiaina,*] because Bangerter [had to] first succeed on her claim to void the sheriff's deed before she [could] have title quieted in her."[63] The defendant therefore asserted that the statute of limitations applicable to her challenge of the sheriff's deed barred the quiet title action.[64]

¶40 Even though we did not explain the reasoning for our decision, we held that the test in *Hoopiiaina* did "not apply to bar an individual or entity in actual possession of property under a claim of ownership from bringing an action to quiet title."[65] Because Ms. Bangerter had remained in actual possession of her home, we

---

[60] *Id.*

[61] *Id.*; s*ee also Ash v. State*, 572 P.2d 1374, 1376 (Utah 1977) ("An action to quiet title is an action at law where the pleadings put in issue the ownership and possession of real property. In such an action, the plaintiff must succeed by virtue of the strength of his own title rather than the weakness of defendant's title; nevertheless all the plaintiff need do is to prove prima facie that he has title, which if not overcome by defendant, is sufficient." (citations omitted)); *Colman v. Butkovich*, 538 P.2d 188, 189 (Utah 1975) (explaining that plaintiff must prove "his own good title" before he could challenge the deed of an adverse party).

[62] 2009 UT 67.

[63] *Id.* ¶ 13.

[64] *Id.*

[65] *Id.* ¶ 14.

held that her quiet title action was not barred by the statute of limitations.[66]

¶41 Subsequent to our decisions in *Hoopiiaina* and *Bangerter*, lower courts have treated the two opinions as if they created two separate quiet title exceptions. And in so doing, they have struggled to apply the exceptions consistently. But *Hoopiiaina* and *Bangerter* did not create two separate exceptions. Rather, both cases attempted to give effect to the same, long-standing rule that a genuine quiet title claim is not barred by a statute of limitations. Given the confusion lingering in the wake of *Hoopiiaina* and *Bangerter*,[67] we now clarify the quiet title exception by reexamining our case law in light of the requirements for a successful quiet title claim. In doing so, we hold that a plaintiff's quiet title claim is not barred by a statute of limitations if the plaintiff is able to establish a prima facie quiet title case without first receiving some other relief from the court.

*A. Requirements of a meritorious quiet title claim*

¶42 A quiet title claim, "as its name connotes, is one to quiet an [e]xisting title against an adverse or hostile claim of another."[68] It is

---

[66] *Id.* ¶ 17.

[67] The confusion among lower courts regarding the quiet title exception is understandable because neither *Hoopiiaina* nor *Bangerter* discussed the statute of limitations exception in the context of the requirements for a meritorious quiet title action. For example, in *Hoopiiaina*, we explained that a "party's claim for quiet title relief" cannot depend upon the success of "another claim." 2006 UT 53, ¶ 27. But without the proper context, this language could be interpreted in two ways: (1) that the plaintiff's establishment of a prima facie quiet title case cannot depend upon the success of another claim or (2) that the success of the plaintiff's quiet title claim, as a whole, cannot depend upon the success of another claim.

[68] *State ex rel. Dep't of Soc. Servs. v. Santiago*, 590 P.2d 335, 337 (Utah 1979); *see also* 65 AM. JUR. 2D *Quieting Title* § 1 (2019) ("In a quiet title action, the plaintiff asks the court to declare that he or she has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it. In other words, a quiet title action requests a judicial determination of all adverse claims to disputed property." (footnotes omitted)).

not an action "brought to [e]stablish title."[69] Consequently, a quiet title claim fails if the plaintiff cannot establish valid title[70] or some other valid and existing property right.[71] Accordingly, when courts encounter a claim to quiet title, they must analyze the claim in two steps. First they must determine whether the plaintiff has established a prima facie quiet title case. A prima facie quiet title case has two elements: (1) "title,"[72] or other valid interest, to the property at issue and (2) a claim of an adverse estate or interest in the property.[73]

---

[69] *Santiago*, 590 P.2d at 337; *see also* 65 AM. JUR. 2D *Quieting Title* § 1 (2019) ("The purpose of a quiet title action is to finally settle and determine, as between the parties, all conflicting claims to the property in the controversy, and to decree to each party such interest or estate therein as he or she may be entitled to, but it is not to invest the court with jurisdiction to sell or dispose of title to the land." (footnotes omitted)).

[70] *Andrus v. Bagley*, 775 P.2d 934, 935 (Utah 1989) (holding that because the plaintiff "had no interest, he had no standing to bring the action"); *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048–49 (Utah 1983) ("To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title."); *cf. Ash*, 572 P.2d at 1376 ("In such an action, the plaintiff must succeed by virtue of the strength of his own title rather than the weakness of defendant's title; nevertheless all the plaintiff need do is to prove prima facie that he has title, which if not overcome by defendant, is sufficient."); *Babcock v. Dangerfield*, 94 P.2d 862, 863 (Utah 1939) ("While it is true that in an action to quiet title the plaintiff must succeed by virtue of the strength of his own title rather than the weakness of defendant's title, nevertheless all the plaintiff need do is to prove prima facie that he has title which, if not overcome by defendant, is sufficient.").

[71] *See* UTAH CODE § 78B-6-1301 ("A person may bring an action against another person to determine rights, interests, or claims to or in personal or real property.").

[72] As *Hoopiiaina* and *Bangerter* show, title may be shown through record title, *Hoopiiaina*, 2006 UT 53, ¶ 31, or through a presumption of title stemming from "actual possession of property under a claim of ownership." *Bangerter*, 2009 UT 67, ¶ 14; *see also E. Canyon Land & Stock Co. v. Davis & Weber Ctys. Canal Co.*, 238 P. 280, 283 (Utah 1925) ("Possession of land is prima facie evidence of title, and is sufficient

(Continued)

¶43 The second step of a quiet title claim analysis—after the plaintiff has established a prima facie quiet title case—requires the court to determine whether the plaintiff's property interest is superior to the interests of the other named adverse claimants.[74] This second step almost always requires the court to make a legal determination regarding the validity of the adverse claimant's interest, such as a determination that the adverse interest is void, voidable, or inferior to the plaintiff's interest.[75]

¶44 With this context in mind, our statement in *Hoopiiaina*—that a "party's claim for quiet title relief" cannot depend upon the success

_____

evidence of title as against all persons but one who can show either a prior possession or a better title." (internal quotation marks omitted)); *infra* ¶¶ 51–58.

[73] *Santiago,* 590 P.2d at 337–38 ("One seeking [to quiet title] must allege title, entitlement to possession, and that the estate or interest claimed by others is adverse or hostile to the alleged claims of title or interest."). Although *Santiago* also required the plaintiff to plead an "entitlement to possession," we note that this element will be redundant in most cases because where a plaintiff satisfies the first element—title—he will also be entitled to possession. *See Gibson v. McGurrin*, 106 P. 669, 672 (Utah 1910) ("When [plaintiff] had proved the legal title was in him, then the law presumed that he was in constructive possession, and, in the absence of all evidence to the contrary, that he was entitled to the actual possession."); *see also Brewster v. Soterra, LLC*, 53 So. 3d 145, 149 (Ala. Civ. App. 2010) ("Constructive possession is found when one has legal title to property but is not in actual possession of that property.").

[74] *See Colman*, 538 P.2d at 189 ("Plaintiff says such deed was void because it was vague in description. This assertion seems premature and a stranger to this litigation, since, as stated above, the plaintiff, before asserting it, first must prove his own good title[]—which he has failed to do."); *Mercur Coal. Min. Co. v. Cannon*, 184 P.2d 341, 342 (Utah 1947) (ruling that because the plaintiff failed to establish ownership, the defendant did not have to establish ownership to defeat plaintiff's claim).

[75] *See Hoopiiaina*, 2006 UT 53, ¶ 31 (determining that a grandfather's will conveyance was void due to a lack of authority); *see also Bangerter*, 2009 UT 67, ¶¶ 6, 18 (upon remand the district court would be required to determine whether a sheriff's deed was void).

of "another claim"[76]—cannot be interpreted as requiring the success of the plaintiff's quiet title claim, *as a whole*, to be independent of the success of another claim. This is so because almost every quiet title claim depends upon a showing that the adverse parties' claims to the property are invalid or inferior. So when the standard set out in *Hoopiiaina* is considered in light of the requirements of a quiet title claim, it is clear that statutes of limitations do not apply to quiet title claims if the plaintiff is able to establish its prima facie quiet title case without first receiving some other affirmative relief from the court. This rule is consistent with our case law.

*B. Applying the statute of limitations to quiet title actions only if the plaintiff's prima facie case depends on receiving other relief is consistent with our prior case law*

¶45 An examination of our case law reveals that statutes of limitations do not bar quiet title claims if the plaintiff establishes a prima facie quiet title case without first receiving some other affirmative relief from the court. But where the plaintiff's prima facie case depends on first receiving some other relief from the court, the statute of limitations applicable to that other claim will bar the success of the quiet title claim.

¶46 In one of our earliest cases discussing the quiet title exception, *Branting v. Salt Lake City*,[77] we considered the applicability of the statute of limitations to a plaintiff's quiet title action. In that case, Salt Lake City had passed several ordinances for the purpose of constructing a sewer and had assessed and levied a special tax on the property abutting the sewer—including the plaintiff's—to cover construction costs.[78] The plaintiff filed suit against the city, arguing that the city had exceeded its authority and requesting that the court declare the city's actions void and of no effect.[79]

¶47 As a defense, the city pled that the claim was barred by a four-year statute of limitations.[80] The plaintiff responded that the statute did not apply, because his suit was merely "an action to remove a cloud from the title, or [was] one to quiet the title to real

---

[76] *Hoopiiaina*, 2006 UT 53, ¶ 27.

[77] 153 P. 995, 1000–01 (Utah 1915).

[78] *Id.* at 996.

[79] *Id.*

[80] *Id.* at 1000.

property."[81] Although the court acknowledged the rule that "an action to remove a cloud from, or one to quiet the title to, real property[] is never barred," it noted that the city had "at no time or place asserted title to [the plaintiff's] property. Nor did it question in any way the soundness of his title."[82] And the court noted that the plaintiff had "attempted to make every person who was affected by [the tax assessment] a party to the action."[83] Because "actions to remove clouds from or to quiet title are not generally brought for and on behalf of whole communities," the court concluded that the plaintiff had not actually brought a quiet title action, and so the quiet title exception did not apply.[84] So *Branting* recognized the validity of the quiet title exception to statutes of limitations, but limited its application to cases where a plaintiff brings a genuine quiet title claim.

¶48 In *Davidsen v. Salt Lake City,*[85] decided twenty-three years after *Branting*, we again addressed the question of when the statute of limitations applies to quiet title actions. In that case the plaintiff had agreed to deed certain real property to the city. When he sent the deed to an agent of the city, the plaintiff included a letter stating that the deed was conditioned on the city making certain improvements.[86] But the agent sent the deed to the city commission without the letter.[87] The city "accepted the deed and had it recorded."[88] The plaintiff subsequently demanded that the conditions specified in the letter be met and brought suit when the city refused.[89] In his suit, the plaintiff asked to have the deed set aside on the ground of fraud, to quiet title, and for general relief.[90]

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 1001.

[84] *Id.*

[85] 81 P.2d 374 (Utah 1938).

[86] *Id.* at 374; *see also Hoopiiaina*, 2006 UT 53, ¶ 24 (citing *Davidsen*, 81 P.2d at 374).

[87] *Davidsen,* 81 P.2d at 374.

[88] *Id.*

[89] *Id.* at 374–75.

[90] *Id.* at 374.

But the plaintiff brought his suit outside the statute of limitations period for fraud claims.[91] And because the plaintiff could not establish a prima facie quiet title case without first establishing "his right to have the deed cancelled" through his fraud claim, we held that he was "not entitled to have his title quieted."[92] In other words, even though we did not apply a statute of limitations to his quiet title action, his quiet title action nevertheless failed because the statute of limitations barring his fraud claim prevented him from establishing a prima facie case of quiet title.[93]

¶49 In *Rodgers v. Hansen*,[94] we again addressed this issue. In that case, a mother purchased a home with the help of her daughter and son-in-law. Although the title in the home was recorded in the name of all three—the mother, her daughter, and her son-in-law—as joint-tenants, the mother was always the only occupant of the home, and she made regular house payments to her daughter.[95]

¶50 A few years later, a "family squabble over the ownership of the property began."[96] The mother initiated a quiet title action, seeking a judicial declaration that the deed in her daughter and son-in-law's favor was actually an equitable mortgage.[97] Even though the mother had known of the property dispute for a number of years, we held that her claim was not defeated by the statute of

---

[91] *Id.* at 377.

[92] *Id.* at 376. The plaintiff had no deed and could not establish a presumption of ownership through actual possession. *See E. Canyon Land & Stock Co.*, 238 P. at 283 ("Possession of land is prima facie evidence of title, and is sufficient evidence of title as against all persons but one who can show either a prior possession or a better title." (internal quotation marks omitted)); *see also* 65 AM. JUR. 2D *Quieting Title* § 37 (2019) ("Under some state statutes, to bring a quiet title action, the claimant must have title or possession.").

[93] *Davidsen*, 81 P.2d at 377 ("But if his relief in each case depends as here upon the cancellation of a deed for fraud or mistake, he must bring his action within the period provided by law for an action based upon that ground.").

[94] 580 P.2d 233, 234 (Utah 1978).

[95] *Id.*

[96] *Id.*

[97] *Id.*

limitations, because she "had continuous possession of the property."[98] Although we did not state it expressly, the mother's possession allowed her to establish a prima facie quiet title case without having to prevail on another claim first.[99] So our decision in *Rodgers* accorded with the statute of limitations exception articulated in *Davidsen*.

¶51 Returning again to examine our decisions in *Hoopiiaina* and *Bangerter* in light of the elements of a successful quiet title claim, it is clear that we intended the quiet title exception to apply to all quiet title actions where the plaintiff is able to establish its prima facie quiet title case without first receiving other relief from the court.

¶52 In *Hoopiiaina,* two grandchildren were named beneficiaries in two irrevocable trusts.[100] Their grandfather, the settlor of the trusts, conveyed two properties into the trust.[101] Because the trusts were irrevocable, this conveyance immediately deprived the grandfather of title to the properties. Years later—after the two grandchildren became the sole remaining beneficiaries of the trusts—the grandfather purported to convey the real property owned by the trusts to his second wife (the plaintiffs' stepgrandmother) and her son through a holographic will.[102] When the grandfather died, the stepgrandmother was appointed as personal representative of the grandfather's estate.[103] The deeds to

---

[98] *Id.* at 235.

[99] *See, e.g., E. Canyon Land & Stock Co.*, 238 P. at 283 ("Possession of land is prima facie evidence of title, and is sufficient evidence of title as against all persons but one who can show either a prior possession or a better title." (internal quotation marks omitted)); *see also Bank of Vernal v. Uintah Cty.*, 250 P.2d 581, 583 (Utah 1952) (explaining that "the right of possession . . . is the most important single incident of ownership"). In 2000, the Utah Court of Appeals cited our decisions in *Rodgers* and *Davidsen* for the proposition that "those in actual possession of real estate are never barred by any statute of limitation from seeking to quiet their title." *Conder v. Hunt*, 2000 UT App 105, ¶ 17, 1 P.3d 558. And our decision in *Bangerter* reaffirmed this rule.

[100] *Hoopiiaina*, 2006 UT 53, ¶ 1.

[101] *Id.* ¶ 3.

[102] *Id.* ¶ 7.

[103] *Id.* ¶ 8.

the two properties were subsequently conveyed to the stepgrandmother and her son.[104] A few years later the grandchildren brought a quiet title action to quiet title of both properties in their favor.[105] The district court ruled that the quiet title action was barred by a statute of limitations, and the grandchildren appealed.[106]

¶53 On appeal we held that no statute of limitations applied. In doing so we expressly reaffirmed the rule, acknowledged in *Branting*, *Davidsen*, and *Rodgers*, that "suits brought to quiet the title to real property have always been" exempted from statutes of limitations.[107] And although we expressed concern that parties could attempt to avoid the statute of limitations on other claims by labeling them as quiet title actions, our decision in *Hoopiiaina* did not modify the rule that all quiet title claims are exempt from statutes of limitations. Instead, we attempted to create a standard that would help courts distinguish between quiet title actions and other actions for affirmative relief that were disguised as quiet title actions.[108]

¶54 We explained that to determine whether an action was a genuine quiet title action, courts must examine the relief sought.[109] If the party "merely requests that the court adjudicate the validity of an opponent's adverse or hostile claim to property to which the party already holds title," then the claim is truly a quiet title claim.[110] But if a party cannot establish its quiet title claim without first establishing title by prevailing on another claim, then the statute of limitations for the other claim will, if applicable, bar the party from establishing its quiet title claim.[111]

¶55 Applying this clarified standard to the facts of the case, we held that because the plaintiffs were "immediately vested with equitable title to the trust properties" when the trusts were created, it was "not necessary for [us] to rule in plaintiffs' favor" before they

---

[104] *Id.* ¶ 10.

[105] *Id.* ¶ 13.

[106] *Id.* ¶¶ 14–15.

[107] *Id.* ¶ 26.

[108] *Id.*

[109] *Id.* ¶ 27.

[110] *Id.*

[111] *Id.*

established that they were "entitled to quiet title" to the properties.[112] This was so despite the fact that the ultimate success of their claim depended upon a finding that the subsequent will was created without authority. In other words, the plaintiffs' quiet title action was not barred by a statute of limitations, because they were able to establish a prima facie quiet title case without first receiving some other form of relief.

¶56 Our decision in *Bangerter* was likewise consistent with this approach. In that case we were asked to decide whether a statute of limitations applied to a quiet title claim where the plaintiff did not have record title to the property but had remained in continuous possession of it.[113] The defendant argued that the statute of limitations applicable to the plaintiff's challenge of the sheriff's deed barred the quiet title action.[114] According to the defendant, this was so, despite our holding in *Hoopiiaina,* because the plaintiff's "claim [was] not a true quiet title action" under the test in *Hoopiiaina.*[115] It claimed that it was not a true quiet title action, because the plaintiff first had to "succeed on her claim to void the sheriff's deed before she [could] have title quieted in her."[116]

¶57 Without explaining our reasoning, we held that an individual or entity in actual possession of property under a claim of ownership was not barred from bringing an action to quiet title.[117] In doing so we cited *Rodgers* and *Davidsen* for the proposition that when an individual or entity "is (1) in actual possession of property and (2) under a claim of ownership" the "statute of limitations does not bar [that] individual or entity from bringing an action to quiet title."[118] Although some lower courts have treated *Hoopiiaina* and *Bangerter* as if they created two separate statute of limitations exceptions,[119] *Bangerter* is more accurately read as a recognition of

---

[112] *Id.* ¶¶ 31–32.

[113] *Bangerter*, 2009 UT 67, ¶ 11.

[114] *Id.* ¶ 13.

[115] *Id.*

[116] *Id.*

[117] *Id.* ¶ 14.

[118] *Id.* ¶ 16.

[119] *See, e.g., Powder Run at Deer Valley Owner Ass'n v. Black Diamond Lodge at Deer Valley Ass'n of Unit Owners*, 2014 UT App 43,

(Continued)

¶¶ 17–30, 320 P.3d 1076 (discussing a "true quiet title exception" separately from an "actual possession exception"). In *Powder Run*, the court of appeals treated *Hoopiiaina* and *Bangerter* as two separate exceptions and, by doing so, it outlined legal reasoning that was inconsistent with our decision in *Hoopiiaina*. The court in *Powder Run* considered whether a statute of limitations barred the quiet title action brought by a plaintiff homeowners association against another, defendant homeowners association (which owned an easement across the plaintiff homeowners association's property) and Park City (which dedicated the easement as a public street). The basis of the plaintiff HOA's claim was that the defendant HOA "did not have any legal right to dedicate the easement to the City." *Id.* ¶ 9. Because Park City "had no legal authority to declare the easement a public road" the plaintiff argued that the ordinance "was void ab initio." *Id.* ¶ 16. But the court of appeals ruled that the plaintiff HOA's request to quiet title in the property was time barred because neither the true quiet title exception under *Hoopiiaina*, nor the actual possession exception in *Bangerter,* applied. *Id.* ¶ 32.

The court held that the true quiet title exception did not apply, because "the basis of [the plaintiff HOA's] claim [was] its argument that the ordinance [was] void. [It] thus could not succeed on its quiet title claim without first striking down the ordinance." *Id.* ¶ 19. This reasoning is problematic because the same reasoning could have been applied to the plaintiffs' claim in *Hoopiiaina*. (In *Hoopiiaina*, the basis of the plaintiffs' claim was that the will devising property to the defendant was void.) In fact, the court in *Powder Run* conceded that there were "some similarities between *Hoopiiaina Trust* and the present case," but distinguished the two cases based on the subsequent "legislative action" Park City took by adopting an ordinance accepting the dedication. *Id.* ¶ 26. But this is a distinction without a difference. The purpose of a quiet title action is to "request[] a judicial determination of all adverse claims to disputed property." 65 AM. JUR. 2D *Quieting Title* § 1 (2019) ("[A] quiet title action requests a judicial determination of all adverse claims to disputed property."). There is no reason why an otherwise valid quiet title action should be barred just because there are two adverse claimants rather than one. This is true even if one of the adverse claimants purportedly obtained its interest from another adverse claimant or through legislative action. By applying *Hoopiiaina*'s "some affirmative relief" test to the plaintiff's entire claim rather than the plaintiff's prima facie case, the court employed legal

(Continued)

the rule that actual possession creates a presumption of ownership.[120] And because of this presumption, a plaintiff in actual possession of property is able to establish a prima facie quiet title case without first receiving other relief, thereby qualifying for the true quiet title exception we relied on in *Hoopiiaina*.

¶58 Accordingly, *Hoopiiaina* and *Bangerter* stand for the same thing: if a plaintiff can establish its prima facie quiet title case—either through a showing of actual possession under a claim of ownership or through record title—there is no applicable statute of limitations to bar the claim. We reaffirm this standard and apply it in this case.

### C. WDIS's quiet title claim is not time barred, because it has pled a prima facie quiet title claim in its complaint

¶59 WDIS's quiet title claim is not time barred, because it has pled a prima facie case of quiet title. In its complaint, WDIS alleges that it holds title to the property. Additionally, WDIS alleges that the HOA's interest is adverse to its own. So WDIS has established the two elements of a prima facie quiet title case against the HOA. Although the district court will have to determine whether the HOA's encumbrances are void or voidable before WDIS prevails on the merits of its claim, the establishment of WDIS's prima facie case is not dependent on this determination.[121] Accordingly, the quiet title exception to statutes of limitations applies, and WDIS's quiet title claim is not time barred.

---

reasoning that is inconsistent with *Hoopiiaina* and quiet title principles generally.

[120] *E. Canyon Land & Stock Co.*, 238 P. at 283 ("Possession of land is prima facie evidence of title, and is sufficient evidence of title as against all persons but one who can show either a prior possession or a better title." (internal quotation marks omitted)); *see also Bank of Vernal*, 250 P.2d at 583 (explaining that "the right of possession . . . is the most important single incident of ownership"); *Conder*, 2000 UT App 105, ¶ 17 (citing our decisions in *Rogers* and *Davidsen* for the proposition that "those in actual possession of real estate are never barred by any statute of limitation from seeking to quiet their title").

[121] *See, e.g., Ash*, 572 P.2d at 1376 ("In such an action, the plaintiff must succeed by virtue of the strength of his own title rather than the weakness of defendant's title; nevertheless all the plaintiff need do is to prove prima facie that he has title, which if not overcome by defendant, is sufficient.").

¶60  In sum, our opinions in *Bangerter* and *Hoopiiaina*[122] discussed the same quiet title exception to statutes of limitations. Under this rule, statutes of limitations do not apply to quiet title claims if the plaintiff is able to establish a prima facie quiet title case without first receiving some other relief from the court. Applying this rule in this case, we hold that WDIS's quiet title claim is not time barred. Accordingly, we reverse the district court's order and remand for proceedings consistent with this opinion.

### III. We Reverse the District Court's Res Judicata Decision

¶61  Finally, WDIS argues that the district court erred by looking beyond the pleadings to make its res judicata decision. Because the HOA failed to address WDIS's plausible argument on this issue,[123] we rule in WDIS's favor without reaching the issue's merits.[124]

### Conclusion

¶62  We hold that WDIS's quiet title claim was not barred by a statute of limitations, because WDIS is able to establish a prima facie quiet title case without first receiving some other relief from the court. So we reverse the district court's dismissal of WDIS's quiet title claim. Because this determination renders a determination on WDIS's void encumbrance argument unnecessary, we decline to address it.

¶63  We also reverse the district court's res judicata determination without reaching the merits of the decision because the HOA failed to adequately brief this issue. Accordingly, we remand for proceedings consistent with this opinion.

---

[122] As well as *Branting*, *Davidsen*, and *Rodgers*.

[123] In its brief, the HOA stated that "[g]iven the relatively insignificant impact of this ruling, Appellee does not intend to offer argument as to this issue."

[124] *See Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶ 20, 279 P.3d 391 ("Accordingly, because of AMC's inadequate briefing of the issues raised by Tenants, we reject AMC's brief. And thus, without reaching the merits of the broader issues before us, we accept Tenants' claim that the Exculpatory Clause in the Agreement is unenforceable.").